## O'HAVER v. SHIDLER, Guardian of HIGGINS.

DEMURRER TO PART OF A PARAGRAPH.—A demurrer will not lie to a part of a complaint consisting of a single paragraph, and containing only one cause of action. The objection must be taken either by motion or answer.

GUARDIAN AND WARD.—MORTGAGE.—Suit by A, guardian of B, against C, a former guardian, to foreclose a mortgage given by the latter to secure the amount of the trust funds in his hands and unaccounted for at the time of his removal. The mortgage recited that certain notes had been transferred by C to A, and contained an express covenant by C to pay the money within two years, if the same should not sooner be made out of the notes referred to. C answered that the notes described in the mortgage were taken by him for money belonging to said trust, and loaned by him as guardian, &c.; that at the time of the giving of said notes the parties were solvent, &c.

*Held,* that as C had by the mortgage acknowledged his liability and promised to pay the money, he could not go behind the mortgage for the purpose of testing his liability.

*Held,* also, that A was not bound to pursue his remedy on the notes assigned to him, before resorting to the mortgage.

APPEAL from the *Hendricks* Circuit Court.

ELLIOTT, J.—This was a suit by *Shidler,* as guardian of *Abraham A. Higgins,* against the appellant, *O'Haver,* for the

foreclosure of a mortgage executed by the latter to the former, on the 14th day of *February*, 1862, on certain real estate, to secure to *Shidler*, as such guardian, the payment of the sum of $3,440 44, payable at the expiration of two years from the date aforesaid. The sum so secured is stated in the mortgage as "being the amount ascertained to be owing from said *O'Haver*, as former guardian of *Abraham A. Higgins*, to the said *Isaac M. Shidler*, present guardian as aforesaid, and for which indebtedness the said *Cornelius O'Haver* has also this day delivered to the said *Isaac M. Shidler*, guardian," &c., "the following described promissory notes, to-wit: One note signed by *Hiram Lindley*, dated *November* 6, 1857, due five years after date, for the sum of $1,400, with interest from date, the interest to be paid annually, and which note is secured by a mortgage from said *Hiram Lindley* and his wife to the said *Cornelius O'Haver* on 280 acres of land situated in *Story* county, *Iowa*, conditioned for the foreclosure thereof on failure to pay the same at the end of any year, upon which there is a credit, dated *November* 6, 1858, of $84, in full of interest to said date." Also a note on *Hiram Lindley* and *John Carter*, dated *November* 6, 1858, due one day after date, for $84. Also a note on *David Mills* and *Silas Bryant*, dated *May* 12, 1858, due twelve months after date, for $719 67, with interest from date, with a credit indorsed thereon of $50, *February* 29, 1860. Also a note on *Silas Bryant*, *David Mills* and *E. D. Bryant*, dated *May* 12, 1858, due in twelve months from date, for the sum of $719 67½, with a credit indorsed *February* 29, 1860, of $50, &c. The mortgage also contains an express agreement on the part of the mortgagor, two years after the date thereof, to pay the said sum of $3,440 44, with interest from date, provided the same should not sooner be collected on the promissory notes. The plaintiff collected the amount due on the note executed by *David Mills* and the two *Bryants*, and as to the other notes described in the mortgage, the plaintiff stated in the complaint that no suits had been brought thereon against

the makers, except the note on *Mills* and *Silas Bryant*, on which a judgment had been recovered, but that they were insolvent and no part of the judgment had been, or could be collected, and that the defendant had consented and agreed that no suit should be brought on either of the other notes, and that the makers thereof were all insolvent; that the lands in *Iowa*, mortgaged by *Hiram Lindley* to secure the payment of the note executed by him, had been sold for taxes before the execution of the mortgage to the plaintiff, now in suit, but of which fact the plaintiff had no knowledge at the time the defendant executed the mortgage.

The defendant demurred to so much of the complaint "as seeks to recover for the amount of the note and mortgage executed by *Hiram Lindley*, for the reason that it does not state facts sufficient to constitute a cause of action." The demurrer was overruled, and the defendant excepted. This ruling is complained of. The objection cannot be sustained. The mortgage was not made to secure the several notes complained of, but to secure the sum of $3,440 44, in the hands of the defendant as the former guardian of *Higgins*. The complaint is for the recovery of this single and entire sum, and a demurrer will not lie to a part of a complaint consisting of but a single paragraph, and containing only one cause of action. The objection to a part of the paragraph, if valid, should have been taken either by motion or answer.

The defendant filed an answer of six paragraphs. The first was a general denial. Issues of fact were formed on the second, fourth and fifth paragraphs, and no question arises upon them in this court. Demurrers were sustained to the third and sixth paragraphs, to which the defendant excepted. The issues of fact were tried by the court. Finding and judgment for the plaintiff.

The third paragraph of the answer, to which a demurrer was sustained, alleges, in substance, that the defendant, as the former guardian of *Higgins*, received the sum of

$3,440 44, mentioned in the mortgage, and loaned the same as follows: To *Hiram Lindley*, $1,400, to secure which he took from said *Lindley* a mortgage on lands in *Story* county, in the State of *Iowa*, of the value of $2,000; that he loaned to *Silas Bryant* $719 67½, for which he executed his note with *David Mills* and *E. D. Bryant* as sureties, and also executed a mortgage on personal property sufficient to secure said sum, and that the makers of said note were still solvent and able to pay the same; that he loaned to *David Mills* the sum of $719 67½, for which he executed his promissory note with *Silas Bryant* as surety, both of whom at the time were reputed to be wealthy, and had in their possession and held in their own names large tracts of real estate, besides personal property of great value, and were generally regarded as safe and reliable persons to whom to loan money; that he used all proper diligence to prevent loss on account of said loans, and that he delivered said notes to the plaintiff at the time of executing to him the said mortgage. It is further alleged that at the same time the defendant delivered to the plaintiff notes on *A. B. Riley* and *Reuben Coverdale* for $600, and all the other notes and mortgages in his hands belonging to said wards.

This paragraph assumes to answer the whole complaint, but the grounds of the defense intended to be set up thereby are not clearly perceptible. We infer, however, that as to the loans to *Lindley*, *Silas Bryant* and *Mills*, the question intended to be presented, or the ground of defense, is, that the money so loaned belonged to *Higgins*, the ward, and that the persons to whom it was loaned were solvent, or so reputed, at the date of the loans; and that the defendant, as the guardian of *Higgins* and the trustee of the fund, had used proper care and diligence in loaning and securing the money, and that he was not, therefore, responsible for unavoidable loss. Whether this ground of defense could have been rendered available to all or any part of the claim, if the defendant had been sued on his bond as guardian, we

need not here determine. With a full knowledge of the facts, he entered into a settlement of the trust with the plaintiff, his successor, acknowledged his liability for the money, promised to pay it, and executed the mortgage in suit to secure its payment, and he cannot now be permitted to go behind the settlement for the purpose of testing his liability. But the answer is defective for another reason. It assumes to answer the whole complaint but fails to do so, as the aggregate amount of the three notes referred to do not cover the whole amount secured by the mortgage. And if otherwise valid, it would be bad because the averments in the answer fail to show that the defendant had properly discharged his duty in securing the payment of said notes. It is averred in the complaint that *Mills* and his surety were both insolvent at the date of the mortgage; this allegation is not controverted by the answer, though it is averred that they were solvent and possessed of a large amount of property at the time the money was loaned to *Mills*. The mortgage shows that the note was given *May* 12, 1858, and was due twelve months thereafter. It remained in the defendant's possession, and was not delivered to the plaintiff until the execution of the mortgage, on the 12th of *February*, 1862, at which time it is alleged the makers were insolvent. It remained in the possession of the defendant for a period of nearly three years after it became due, during which time he made no effort to collect it by suit, nor does he show any reason for his neglect. The paragraph, we think, was clearly bad, and the demurrer was therefore correctly sustained.

By the sixth paragraph of the answer, it is alleged that the defendant loaned to *Hiram Lindley* $1,400, which he secured by a mortgage on real estate in *Iowa;* that at the time of said loan he had petitioned the Court of Common Pleas of *Hendricks* county, *Indiana,* for permission to sell certain real estate in said county, belonging

to said ward, and to invest the same in lands in the west, for the benefit of said ward, and that after said court had ordered the sale, and before the same was made, he made said loan of $1,400 to said *Lindley,* and took a mortgage on the lands in *Story* county, *Iowa,* with a view to secure said land for his said ward; that the lands in *Iowa,* at that time, were worth $3,000; that during the pendency of the proceedings for the sale of his ward's land in *Indiana,* he was removed from said guardianship and delivered over to his successor, the plaintiff herein, the said note and mortgage, and that by proper diligence on the part of the plaintiff, the lands in *Iowa* might have been secured for said ward, &c. This paragraph is only pleaded as to the sum of $1,400. The defense presented by it is that the defendant, anticipating that he would be authorized by the Court of Common Pleas of *Hendricks* county to sell certain real estate of his ward in that county, and to invest the proceeds in other real estate in the west, loaned to *Lindley* $1,400, and took a mortgage therefor on certain lands in *Iowa,* which he alleges were of the value of $3,000, with a view to their purchase for said infant; that he was prevented from making said purchase by his removal from said guardianship, but that the plaintiff, to whom he delivered the note and mortgage on *Lindley,* with proper diligence, might have secured the lands for said ward.

This constitutes no defense as to the $1,400. The defendant had no authority to anticipate the action of the court in ordering a sale of his ward's land, by loaning money to *Lindley,* or making a conditional purchase of the land in *Iowa.* It may not have been regarded by the court as a profitable or provident investment, and the defendant's conduct in that respect may have been regarded as a good cause for his removal. No unauthorized action of his in reference to the land would devolve any legal obligation on his successor to make the purchase.

The mortgage was made to secure the amount found due from the defendant to his ward, *Higgins,* and was made paya-

ble at the expiration of two years, and we think a fair interpretation of its language brings it clearly within the rule laid down in *Zekind* v. *Newkirk,* 12 Ind. 544, and *Ballenger* v. *Oswalt, ante* p. 182, and that it was not necessary for the plaintiff to sue on the notes delivered to him by the defendant, before resorting to the mortgage.

The judgment is affirmed, with costs.

*P. S. Kennedy,* for appellant.

*C. C. Nave,* for appellee.