No. 9772.

BISH ET AL. *v.* STOUT, AUDITOR, ET AL.

TOWNSHIP AID TO RAILROAD COMPANY.—*Powers of County Board in Ordering Elections.—Limitations on Such Powers.*—Townships are not authorized to raise by taxation for, or to appropriate to, railroad purposes, to exceed two per centum on the taxables of the township, in any one period of two years. Upon the proper petition of the requisite number of freeholders of the township, the proper county board must order an election to be held in the township, without regard to the number of such elections previously held, unless it appears that the township, within the period of two years preceding, has raised by taxation for, or appropriated to, railroad purposes a sum or sums in excess of two per centum on the taxables of the township.

SAME.—*Petition for Appropriation.—Order of County Board.*—The amount of the appropriation asked for must be stated, with reasonable certainty, in the petition; but it is not necessary that this amount should be mentioned in the orders of the county board, made on the petition.

SAME.—*Electioneering Schemes.—Alleged Fraudulent Practices to Obtain Votes for Appropriation.*—Where the railroad company named in the petition entered into a written agreement with the officers of another company, organized to build another railroad into and through the same township, to the effect that, if the latter company should succeed in so building its railroad, it should have the one-half of the appropriation to be voted for, and, if it failed to so build its proposed railroad, then the former company should receive but one-half of said aid, and where there was no concealment of such agreement, but the same was made public through the county newspapers, and by the circulation of hand-bills.

*Held,* that, if such agreement was legal and valid, its circulation through the township could not fraudulently impose upon the voters and taxpayers.

*Held,* also, that, if the agreement was illegal, the voters and tax-payers must be presumed to have known it, and they can not be heard to complain that they were improperly influenced thereby to vote for the appropriation.

From the Grant Circuit Court.

*G. W. Harvey, I. Van Devanter, J. W. Lacey* and *W. Van Devanter,* for appellants.

*A. Steele, R. T. St. John* and *C. Cowgill,* for appellees.

HOWK, J.—This was a suit by John A. Bish and sixty-five other persons, against the auditor, treasurer, and the board of commissioners, of Grant county, and Washington township of said county, to enjoin the collection of certain taxes levied and assessed for the purpose of enabling said Washington township to make an appropriation of $6,900 to aid in the construction of the Frankfort, St. Louis and Toledo Railroad. The appellees jointly demurred to each specification of the appellants' complaint for the alleged insufficiency of the facts therein to constitute a cause of action, which demurrer was sustained by the court, and to this ruling they excepted. Declining to amend or plead further, judgment was rendered against the appellants for the appellees' costs.

The decision of the circuit court, in sustaining the appellees' demurrer to their complaint and the several spe-

cifications thereof, is the only error assigned by the appellants in this court. It will be seen, therefore, that the only question for our decision may be thus stated: Were the facts stated in the appellants' complaint, or in either of its specifications, sufficient to constitute a cause of action, or to entitle them to the relief prayed for, or to any relief? The proper presentation of this question requires that we should give in this connection a summary, at least, of the facts alleged in the complaint, and in each of its specifications.

The appellants alleged, in substance, that they were severally the owners of real estate and personal property in Washington township, in Grant county; that, on the 14th day of June, 1880, a pretended levy of taxes was made upon all property in said Washington township, by the board of commissioners of said Grant county, in the sum of $6,900, to aid in the construction of the Frankfort, St. Louis and Toledo Railroad; that said pretended levy of taxes had been placed upon the tax duplicate by the appellee, the auditor of said county, and was then upon the duplicate in the hands of the appellee, the treasurer of said county, for collection, who was threatening to collect the same, and, if not enjoined, would levy upon and sell the appellants' property for the purpose of paying said taxes, so levied against their property; that the said levy was unwarranted, illegal and void, for the reasons following, to wit:

1. That no such corporation as the Frankfort, St. Louis and Toledo Railroad Company ever existed, with power to build or maintain a railroad in or through said township.

2. Because the board of commissioners, at the time they ordered the election at which said aid was voted, were without authority to order such election, for the reason that, within less than one year prior to the time said election was so ordered, said board of commissioners had, upon a proper petition, ordered an election in said township upon the ques-

tion of appropriating $14,000, being two per centum on the taxable property of said township, on the tax duplicate for the previous year as delivered by the auditor to the treasurer of said county, in aid of the construction of said Frankfort, St. Louis and Toledo Railroad, which election was in all respects duly held after due notice given; at which election more votes were cast against said appropriation than were cast in its favor, which election has never been in any manner contested or set aside.

3. That said board of commissioners, before ordering the election at which said aid was voted, did not investigate into or find any facts conferring jurisdiction upon said board to order said election.

4. That said board of commissioners, in ordering said election, did not at any time or in any manner provide that said election should be upon the appropriation of any definite sum, or any sum, in aid of the construction of said railroad.

5. That the notices which were given for said election, at which said aid was voted, were given and made by the auditor and sheriff of said county, without any order or warrant from any person or persons or authority whatever.

6. Because said election, at which said aid was voted, was improperly influenced and held, and the legal voters voting at the same in favor of said appropriation were improperly and fraudulently influenced and imposed upon, in this, to wit: Before said election, the beneficiary of said aid, the Frankfort, St. Louis and Toledo Railroad Company, made and entered into a pretended agreement, by which it was agreed that said Frankfort, St. Louis and Toledo Railroad Company should pay over to the Fort Wayne and Terre Haute Narrow-Gauge Railroad Company one-half of the aid so voted, whenever the said Fort Wayne and Terre Haute Narrow-Gauge Railroad should be built through and into said Washington township; that said pretended agreement and

notices thereof were, by said Frankfort, St. Louis and Tole-do Railroad Company, caused to be published in newspapers of general circulation in said Washington township, and printed copies of said agreement and notices thereof were, by said Frankfort, St. Louis and Toledo Railroad Company, caused to be largely and generally circulated among the voters of said Washington township, and said pretended agreement was, by said last named railroad company, caused to be recorded in the miscellaneous record of the recorder's office of said Grant county ; that if an independent election had been fairly and properly held in said township, upon the question of said appropriation, unbiased by said illegal, wrongful and improper agencies, said election could not have been carried for said appropriation ; that neither a majority of the voters in said township nor a majority of the voters who voted at said election were at that time, or at any time since, in favor of said appropriation, independent and unconnected with the terms of said agreement ; and that said agreement constituted the inducement upon which a large number of the voters at said election voted in favor of said appropriation, the number who thus voted upon said inducement being sufficient to have defeated said appropriation.

7. Because said election was improperly influenced, and said election was improperly held, and the legal voters, voting in favor of said appropriation, were fraudulently imposed upon, in this, that, when the order for said election was made and notice thereof given, the beneficiary of said aid, to wit, the Frankfort, St. Louis and Toledo Railroad Company, by its officers, agents and emissaries, published in the county newspaper, printed in Marion, Indiana, which largely circulated among the voters of said Washington township, and also circulated among said voters printed circular copies of said notice, and, in order to give it pretended character, caused the same to be recorded in the miscellaneous record in the recorder's office of said county, which

fact was also inserted in the notice complained of, which said notice was in the words and figures 'following, to wit : "Agreement between the Frankfort, St. Louis and Toledo, and the Fort Wayne and Terre Haute Narrow-Gauge Rail-road Companies : The authorities of the companies above-mentioned have made the following agreement, which ex-plains itself.    Office of the Frankfort, St Louis and Toledo Railroad Company, January 22d, 1880.'    Whereas the le-gal voters of Washington township, Grant county, Indiana, filed a proper petition with the board of commissioners of Grant county, Indiana, asking a vote of the legal voters of said township to vote aid for the construction of the Frank-fort, St. Louis and Toledo Railroad, into and through the township of Washington aforesaid, in the sum of \$13,800, and said commissioners have ordered said election for Feb-ruary 21st, 1880, as provided by law ; now it is agreed on the part of the Frankfort, St. Louis and Toledo Railroad Company, that said railroad company will pay over to the officers of the Fort Wayne and Terre Haute Railroad Com-pany the one-half of said \$13,800, when said Fort Wayne and Terre Haute Railroad shall be built into and through said township of Washington to North Marion, Indiana, as said company proposes to do ; and it is expressly agreed by said railroad companies, that, if said Fort Wayne and Terre Haute Railroad shall not be built, then the one-half of said aid so agreed to be paid over to said Fort Wayne and Terre Haute Railroad Company, when said company shall be en-titled to it, then the said Frankfort, St. Louis and Toledo Railroad Company shall surrender and release to the several tax-payers, who voted said aid as aforesaid, the one-half of said aid as aforesaid, that would be due to said company ; so that, in case the said Fort Wayne and Terre Haute Railroad shall not be built, then the Frankfort, St. Louis and Toledo Railroad Company shall only receive the one-half of said aid as aforesaid."

And the appellants averred that said agreements were in fact made by said railroad companies, signed by their respective officers, and recorded in the recorder's office of said Grant county, on the 10th day of February, 1880; that, had an independent election been fairly and properly held by said company, on its own account, in said township, and had the public judgment of said voters been left free, unbiased and uninfluenced by said illegal, wrongful and improper agencies and notices, the said election would not, and could not, have been carried for said appropriation; that said proposition was well known to the board of commissioners, the auditor and the treasurer of said Grant county, then in office, and all these public officers, as such, permitted said improper notices to be published and circulated as aforesaid; that said Fort Wayne and Terre Haute Railroad Company was an insolvent corporation, which, in law and in fact, had forfeited its charter, and had never constructed any part of its road in any place whatever, although it was proposed and organized for the purpose of constructing a railroad from Fort Wayne, in Allen county, to and beyond Marion, in Grant county; nor was it then prepared or able to construct any part of its said road; and that said election was not so advertised and carried on as to obtain a free and fair expression of the legal voters of said township, and that the majority of the legal voters who voted at said election were not then, and never had been, in favor of voting for said appropriation, independent of and unconnected with the terms and conditions of said agreement; and that said agreement, and the circulation thereof as aforesaid, constituted the real inducement, upon which a large number of the voters of said township, to wit, a majority of the voters voting at said election, voted in favor of said appropriation, who would have voted against it and defeated the same, instead of voting for it as they did, if said fraud had not been so perpetrated upon them; and the appellants averred that

they did not discover that said pretended agreement was not. *bona fide* until more than six months after said election, nor until six months after said levy was ordered by said board of commissioners, nor until the construction of said road was completed through said Washington township. By reason of which facts said election was illegal, a fraud, against. public policy and void. Wherefore, etc.

The first question presented and discussed by the appellants' counsel, in their brief of this cause, arises on the second specification of the complaint. In that specification, it. will be seen from the foregoing summary of the complaint, the appellants alleged in substance, that the taxes in controversy were unwarranted, illegal and void, because, as they averred, the board of commissioners, when they ordered the election at which such taxes were voted, were without authority to make such order, for the reason that within one year before that time the said board had, upon a proper petition, ordered an election in said township on the question of appropriating $14,000 in aid of said Frankfort, St. Louis and Toledo Railroad, which election was in all respects duly held after due notice given; at which election more votes were cast against, than were cast in favor of, said appropriation; and that said election was never in any manner contested, nor set aside. The theory of this specification of the complaint, as we understand it, is, that when the board of commissioners had duly ordered an election in said township on the question of appropriating a certain sum in aid of a. certain railroad, and such election had been duly held, and a majority of the votes cast were against said railroad appropriation, then, and in that event, the said board of commissioners, within one year thereafter, would be without authority, upon a proper petition therefor, to order another election to be held in said township on the question of appropriating the same or any other sum of money in aid of the construction of the same railroad. This theory, as it.

seems to us, is not authorized by any fair construction of the railroad aid law, and can not be sustained.

In support of this theory the appellants' counsel rely upon the provisions of section 1 of the railroad aid act of May 12th, 1869, as amended by an act approved March 17th, 1875, which amended section 1 was again amended by an act approved March 8th, 1879, Acts 1879, p. 46, and also upon the provisions of section 13 of said act of May 12th, 1869, as amended by said act of March 17th, 1875, Acts 1875, Spec. Sess., pp. 70 to 72. We need not set out said amended section 1 in this opinion, but we may say generally, that it gives the board of commissioners full power, and makes it the duty of such board, upon the presentation of proper petitions, signed by the requisite number of free-holders in any township, to order such petitions to be entered at full length upon their records; but it contains no limitation upon the number of such petitions, from the same township, which may be thus received and acted upon in any specified period of time. Said amended section 13 reads as follows:·

"Sec. 13. No township shall be authorized by the provisions of this act to appropriate to railroad purposes, or to raise by taxation for such purpose, to exceed two per centum upon the taxables of such township as said taxables shall appear upon the tax duplicate of the county, in any one period of two years."

This is the only section of the railroad aid act of May 12th, 1869, or of any of its amendments, which can be said by any possibility, as it seems to us, to limit in any degree the number of railroad aid elections in any township, in any given period of time. It can not be said, we think, by any fair construction of language, that this section was intended to or did limit the power of the board of commissioners to order elections to be held in any township, on the question of such township making an appropriation to aid in the con-

struction of any railroad running into or through its territorial limits, upon the presentation of proper petitions of the freeholders of the township, in any given period of two years, until and unless it shall be made to appear that within such period such township has already appropriated to, or raised by taxation for, railroad purposes, an amount equal to two per centum upon the taxables of such township as the same appear upon the tax duplicate of the county. The limitation is upon the amount which the township might appropriate to, or raise by taxation for, railroad purposes within any one period of two years, and not upon the number of elections which the board of commissioners may order in the township upon the question of such appropriation within such period of time ; and certainly not, where it appears, as in this case, that at the only prior election in the township upon such question, within such period of two years, a majority of the votes cast were against the appropriation.

In *Brocaw* v. *The Board*, etc., 73 Ind. 543, one phase of this question of the power of the county board was considered, and, in delivering the opinion of the court, ELLIOTT, J., said : " There is nothing in the act indicating that the power to make an appropriation is exhausted when once exercised. Section 1 of the act fixes, as we have seen, the amount which shall be assessed upon one petition, and section 13 provides that such assessments shall not be made oftener than once in two years, but there is nothing restricting the exercise except as to the amount named and to the period limited." In the case at bar, the second specification of the complaint does not show that Washington township had appropriated to, or raised by taxation for, railroad purposes, any amount whatever, within the period of two years prior to the time the board of commissioners ordered the election mentioned in said specification ; and, therefore, it fails to show that said board were without authority to order such election.

The next question presented by the appellants' counsel is founded upon the fourth specification of the complaint. In this specification it was alleged that the taxes, which are the subject of this suit, were unwarranted, illegal and void, for the reason that said board of commissioners, in ordering said election, did not at any time or in any manner provide that said election should be upon the appropriation of any definite sum, or any sum, in aid of the construction of said railroad. There is nothing in the railroad aid law, or any of its amendments, which required that the board of commissioners, in ordering said election, should provide in said order that said election should be upon the appropriation of any sum, definite or indefinite, in aid of the construction of said railroad. In the amended section 1 of the act, it was made the duty of the board of commissioners, after being satisfied that the petition had been signed by the requisite number of freeholders of the township, "to cause the same to be entered at full length upon their records." Section 2 of the act, as amended by the act of March 17th, 1875, then provided what order the board should make in the matter, as follows :

"Sec. 2. The board of commissioners shall take said petition under advisement and thereupon order the polls at the several voting places of the township so petitioning to be opened, on a day to be named in the order, which shall not be less than thirty nor more than sixty days thereafter, and the votes of the legal voters of such township named in said petition to be taken upon the subject of appropriating money by such township, for the purpose of aiding in the construction of such railroad, as prayed for in said petition."

Of course, it may be inferred, in the absence of any adverse averment, that the petition contained the specified and definite amount which it prayed that Washington township might appropriate to aid in the construction of the railroad

mentioned therein. It may be assumed, in the absence of anything appearing to the contrary, that the board of commissioners ordered the election to be held upon the question of appropriating money, as prayed for in the petition, and this was sufficient. The order was no doubt made in the matter of said petition, and, perhaps, in immediate connection with the entry of the petition on the records of the board. It was not necessary, we think, that the amount specified in the petition should be set out in the order of the board for an election.

The sixth and seventh specifications of the complaint allege substantially the same matters, and differ from each other chiefly in this, that the seventh specification contains a more elaborate and detailed statement of the facts relied upon than does the sixth, and in that it alleges further that the appellants did not discover that the agreement set out therein was not *bona fide* until more than six months after the election, and after the levy of the taxes in controversy, nor until the complete construction of said railroad through said Washington township. The two specifications may, therefore, be properly considered together. We have heretofore given a full summary of the matters alleged in each of these specifications, and it will be seen therefrom that the substance of the charge in these specifications was, that the election had been carried in favor of the appropriation by means of improper influences and fraudulent practices, and that without the use of these means the election could not have been carried for the appropriation. The improper influences and fraudulent practices, mentioned in said specifications, consisted in an agreement entered into between the beneficiary of the aid, named in the petition, and the officers of another organized railroad company, to the effect that if the latter should build their projected railroad into and through Washington township to North Marion, the former would pay over to the latter the one-half of said aid; and

that, if the latter failed to build their proposed railroad, the former would surrender and release to the tax-payers of said township the one-half of said aid, so that if the latter failed to build their proposed railroad, the former would only receive the one-half of said aid.   It was not alleged that there was any attempt on the part of either of the parties, or of any one else, to conceal this agreement from the voters or tax-payers of said township ; but, on the contrary, it was alleged that the agreement had been made public, in almost every conceivable mode, throughout said Washington township.

We are of the opinion that the matters alleged in the sixth and seventh specifications of the complaint were not sufficient to show such improper influences and fraudulent practices on the part of the appellees, or of either of them, as would or ought to vitiate or avoid the said election, or the taxes levied in pursuance thereof.   It will be seen from the allegations of both of said specifications, that the alleged imposition and fraud are predicated upon the said agreement between the beneficiary of the aid and the other railroad company mentioned therein.   This agreement was either legal or illegal.   If it was a legal and valid agreement, we fail to see how its circulation through the township could improperly influence or fraudulently impose upon the voters and tax-payers of said township.   If, on the other hand, the agreement was illegal, it was void from the beginning, and the appellants must be presumed to have known it, and they can not now be heard to say, that they and the other voters and tax-payers of the township were improperly influenced or bribed by such void and illegal agreement to cast their votes, at said election, in favor of said appropriation.

Upon the whole case our conclusion is, that the demurrers, for the want of facts, were correctly sustained to the complaint and its several specifications.

The judgment is affirmed, at the appellants' costs.