Hilton *et al. v.* Mason, Treasurer.

———————

No. 10,891.

HILTON ET AL. *v.* MASON, TREASURER.

RAILROAD.—*Tax.— Public Aid.—Order of County Commissioners.— Notice.— Record.—Collateral Attack.—Injunction.*—The order of the board of county commissioners directing the levy of a tax to aid in the construction of a railroad can not be attacked collaterally, in a suit to enjoin the collection of the tax, for any cause which was available when the order was made, not even for want of the notice required by law, unless the record shows affirmatively that there was no notice whatever.

SAME.—*Witness.*—*Expert.*—*Opinion.*—Whether a railroad was finished at. a certain date is a question of fact involving science and skill, and not a mixed question of law and fact, and the opinion of experts is admissible concerning it.

INJUNCTION.—*Complaint.*—*Demurrer.*—*Practice.*—When a complaint for injunction in a single paragraph specifies several independent reasons for granting the relief sought, a demurrer may be addressed to any such separate specification.

WITNESS.—*Leading Questions.*—*Supreme Court.*—A leading question, the answer to which shows that the witness was not led, affords no reason for complaint, nor will the Supreme Court regard the permitting of such questions as error, unless it appears that injury resulted.

From the Jay Circuit Court.

*T. Bosworth, O. H. Adair, J. M. Haynes* and *S. W. Haynes,* for appellants.

*J. W. Headington, D. T. Taylor, J. J. M. LaFollette, J. M. Smith* and *J. B. Cohrs,* for appellee.

FRANKLIN, C.—The appellants filed their complaint in the Jay Circuit Court on the 15th day of April, 1882, to enjoin the collection of a tax voted by the citizens of Wayne township in that county, in aid of the Lake Erie and Western Railway Company, and on June 8th, 1882, filed their amended complaint. The complaint enumerated in eleven distinct specifications eleven reasons or causes why the tax should be enjoined. Demurrers were filed to the complaint,. and to each specification severally. The demurrer was overruled to the complaint and 1st, 5th, 9th and 10th specifications, and sustained to the 2d, 3d, 4th, 6th, 7th, 8th and 11th specifications. Both parties excepted.

Appellee filed an answer in denial. There was a trial by the court; finding for the defendants, and time given the plaintiffs until the next term in which to file a motion for a new trial. Motion filed, and at the January term, 1883, the same was overruled, and a judgment rendered for the defendants for costs.

The errors assigned are the sustaining of the demurrers to

the 2d, 3d, 4th, 6th, 7th, 8th and 11th specifications, and over-ruling the motion for a new trial.

The appellee, after formally joining in the errors assigned, has assigned cross errors upon the overruling of the demurrer to 1st, 5th, 9th and 10th specifications. .

The first objection made by appellants to the sustaining of the demurrers to the above mentioned specifications is, that under the code of Indiana, as construed by this court, no demurrer can be interposed to the separate specifications.

In support of this proposition we have been referred to the following authorities: *Estep* v. *Estep*, 23 Ind. 114; *O'Haver* v. *Shidler*, 26 Ind. 278; *Smith* v. *Muncie National Bank*, 29 Ind. 158; *Voorhees* v. *Hushaw*, 30 Ind. 488; *Beals* v. *Beals*, 27 Ind. 77; *Mathews* v. *Norman*, 42 Ind. 176.

We have examined these cases and think that none of them are applicable to the case under consideration. All that is decided by any of them in relation to this question is, that where the complaint consists of but one paragraph, under our code, a special demurrer will not lie to a separate allegation, not containing a cause of action within itself, but the remedy in such cases is by motion to strike out.

We have also been referred to the case of *Boden* v. *Dill*, 58 Ind. 273. That was a suit upon an injunction bond; but one breach was assigned, under which several specifications of injury were alleged. The court held that a separate demurrer would not lie to either of the specifications of injury; that there was but one condition in the bond and but one breach could be alleged; that condition is an entirety, and there could be but one fulfilment of it; that it was not like a bond with several conditions, or where several breaches might be assigned, as a suit for slander or libel, in which such practice of demurring to separate parts of the same paragraph would be permissible; that the better practice in the case then under consideration would have been to have moved to strike them out.

The case of *State, ex rel.,* v. *Hawkins*, 81 Ind. 486, is not

applicable to this question; that was a demurrer to the whole paragraph for duplicity.

But we think this question is settled by later decisions of this court than that in *Boden* v. *Dill*, 58 Ind. 273.

The case of *Mustard* v. *Hoppess*, 69 Ind. 324, is very similar to the one under consideration, in which the following language is used by WORDEN, J.: "We may observe, in reference to the first question thus presented, that it seems to have been the common practice in cases of this and the like nature, to set forth, in one paragraph of complaint, the levying of the tax, and then to proceed, as was done in this case, to state separately the several grounds, where there were several, on which it was claimed that the assessment of the tax was illegal and void.

"This practice has the merit of convenience, and economy of time and expense, as it saves the repetition of the whole statement of the levying of the tax with each specification of objections to it. * * *

"It seems to us, in analogy to the practice in kindred cases to be soon noticed, the defendants would have the right to either plead or demur to each of the specifications, in the same manner as if each had been contained in a separate paragraph of the complaint. Thus, in actions for slander, where there are different sets of words charged in one paragraph of complaint, the defendant may plead or demur to each set of words. Also, in actions upon bonds, where there are several breaches assigned in one paragraph of complaint, the defendant may plead or demur to each breach assigned."

This ruling was again affirmed in the case of *Sheetz* v. *Longlois*, 69 Ind. 491; and, again in *Reynolds* v. *Faris*, 80 Ind. 14.

Under these late and well considered cases, there can be no doubt of this being the correct practice, and within the exceptions noted in *Boden* v. *Dill*, 58 Ind. 273.

Appellants' counsel further insist that the statute in relation to voting aid to railroad companies is of doubtful con-

stitutionality, and, being in derogation of common right, should be strictly construed.

In the case of *Petty* v. *Myers,* 49 Ind. 1, this court held that the constitutionality of the statute was no longer an open question in this State, and that ruling has been uniformly adhered to ever since.

The law having its origin in, and being based upon, the will of the people, and having been sanctioned by the wisdom of many years practical experience, the object of courts in construing its provisions has been to give effect to, and not to defeat the purposes of, the law. And while they hold parties to a substantially strict compliance with the provisions of the statute, they ought not to give the language used such a hypercritical construction as to nullify the law and defeat the objects of its enactment.

These petitions frequently emanate directly from the people, and they are therefore often drawn loosely and without the skill of the legal pleader or conveyancer, and ought, therefore, to receive a reasonable construction, instead of a technical and rigid rule of construction of the language used. *Garrigus* v. *Board, etc.,* 39 Ind. 66 ; *Detroit, etc., R. R. Co.* v. *Bearss,* 39 Ind. 598 ; *Wilson* v. *Board, etc.,* 68 Ind. 507.

In the last case cited, the court uses the following language: " The petition is loosely worded, and was not drawn with legal accuracy and precision, but it seems to us that the object and purpose of the petition could not be misunderstood by any one, and certainly were not misunderstood by the county board, as is clearly shown by the record of their proceedings on said petition." These objections are not well made.

Having disposed of these general and preliminary questions, it is insisted that each specification to which the demurrer was sustained is sufficient. They read as follows :

" 2d. There is a discrepancy between the petition and the notice, in this, the petition asks aid for the Lake Erie and Western Railway Company, and the notice to the taxpayers

is to vote aid to the Lake Erie and Western Rail*road* Company.

"3d. There is a discrepancy between the petition presented to the board, and the order made by said board, in this, said petition asks aid to the Lake Erie and Western Rail*way* Company, and the order made by said board for said Wayne township to hold an election to determine whether they would vote said aid, does not state what railroad is to receive said aid; and the order of said board of commissioners for the assessment is to aid the Lake Erie and Western Rail*road* company in the construction of their road.

"4th. Because said petition to said board of commissioners is wholly defective, and gave the board of commissioners no authority to act on said petition, in this, said petition does not state that the money prayed for in the petition is to aid in the construction of the Lake Erie and Western Railway; the petition does not state whether said railway was finished in whole or in part; said petition does not state any year upon which said tax shall be based or levied.

"6th. Because said Lake Erie and Western Railway Company had not, at the time said petition was presented to said board of commissioners, and hence not now, any interest whatever in, or claim to, the money so raised by said tax.

"7. Because said sum so raised by said tax was not voted as aid to construct said railway, but to relieve certain persons from paying a bond, which they had given to secure the said sum of money.

"8th. Because the tax so levied, if collected, is not for the benefit of said railway company, neither any part thereof, but said entire amount is for the sole benefit of Brown, Howard & Co., a partnership firm, who were contractors for the construction of said railway, and who had completed their work, and had been discharged from the said contract long before said petition was filed asking for said appropriation.

"10. Because said tax is unconstitutional and void. Wherefore," etc.

No appeal was taken from any of the proceedings of the board of commissioners upon this petition. And the law is well settled in this State, that jurisdictional questions passed upon by the board of commissioners on matters within their jurisdiction are settled, and, in the absence of allegations of fraud, can not be enquired into collaterally by way of injunction. In the case of *Markle* v. *Board, etc.,* 55 Ind. 185, it was held that "It could not be done for fraud practiced in the petition, nor in the land titles, nor for anything which existed before and could be contested in the proceedings while they were *in fieri,* and before the final judgment thereon. If the appellants omitted their opportunity then,—their day in court—it is now too late to attack the proceedings collaterally."

In the case of *Hume* v. *Little Flat Rock, etc., Ass'n,* 72 Ind. 499, it was held that "the finding and order of the county board, on the question involved in its decision, not having been appealed from, must be held to be final and conclusive, and binding, even though erroneous, and can not be attacked collaterally, by evidence or otherwise. This doctrine has been recognized and acted upon in numerous decisions of this court, and it must now be regarded, we think, as settled law in this State."

In the case of *Board, etc.,* v. *Hall,* 70 Ind. 469, it was held that "The filing of the petition calls into exercise the jurisdiction of the board, and authorizes that body to determine, not only whether the petition is properly signed by the requisite number of freeholders of the township, but every other fact necessary to the granting of the prayer of the petition, including the due organization, under the laws of this State, of the company in whose favor aid is asked.

"By the making the order granting the prayer of the petition, the board must be taken to have decided that the company was such an one as was, under the statute, entitled to aid; and if, in this respect, it has committed an error, the decision is, nevertheless, binding and conclusive, unless appealed

from, and can not be attacked collaterally, as by injunction upon the collection of the tax."

In the case of *Muncey* v. *Joest,* 74 Ind. 409, it was held that, " If a court, having jurisdiction of the subject-matter, and required to determine all jurisdictional questions, either expressly or impliedly, adjudges that notice was given, its decision will repel a collateral attack, unless the record of the court affirmatively shows that no notice was given; and this is so although the record shows a defective and irregular notice."

In the case of *Goddard* v. *Stockman,* 74 Ind. 400, it was held that " If the allegation is one that the plaintiffs can be heard to make, and if it is well pleaded, then the demurrer admits it to be true. Otherwise it does not. * * * The board has the right to go behind the canvass of the vote and enquire into the truth of the return made; and any individual interested may appear before them and contest the result of the election, and, if aggrieved at the decision of the board, take his appeal to the circuit court."

The cases of *Faris* v. *Reynolds,* 70 Ind. 359, and *Board, etc.,* v. *Hall,* 70 Ind. 469, follow the same rules.

In the case of *Reynolds* v. *Faris,* 80 Ind. 14, we find the following language : " We might add, in perhaps more comprehensive terms, that, by granting the prayer of the petitioners, the board must be taken to have decided every fact essential to the validity of the order, which decision is conclusive, unless appealed from. * * No error was committed in sustaining the demurrer to these specifications." See, also, *Davidson* v. *Koehler,* 76 Ind. 398 ; *Ricketts* v. *Spraker,* 77 Ind. 371 ; *Argo* v. *Barthand,* 80 Ind. 63 ; *Town of Cicero* v. *Williamson,* 91 Ind. 541.

From the foregoing authorities, it is evident that this court has held, and still adheres to the rule, that every defence, either in law or fact, that can be made against the appropriation before the board of commissioners, must be made before that court, or on appeal; and, if not so done, the parties are

estopped from making it elsewhere, or by an injunction or by collateral attack as to matters existing when the petition was presented, or at the time of the final order of the board granting the petition and levying the tax; that parties can not be silent when they should speak, and be permitted to speak when they should be silent; that having neglected and refused to avail themselves of the opportunity of defences given them by law, both before the board and by appeal, they will not be allowed now to litigate these questions by an injunction.

It is by this rule that we are to test the specifications of the complaint, to which demurrers were sustained.

The second and third specifications are mere plays upon the use of the words railways and railroads. There is no material variance that could have a tendency to mislead any person, and whatever variance may have existed was cured by the final action of the board of commissioners, unappealed from.

The fourth specification consists in objections to the petition; that it does not state that the money was to be used in the construction of the Lake Erie and Western Railway, or whether the railway was finished in whole or in part, or upon what year the tax shall be based or levied. If the petition was uncertain or indefinite, the proper time and place was to make the objection before the board while it was pending there. It is too late to make these objections now in a collateral proceeding. See the authorities heretofore cited.

The sixth specification is that the railway company has no interest in the money. No question can be presented in this case as to the interest of the railway company; it is not a party to this proceeding, and its rights herein can not be investigated.

This court has held that in all these proceedings they are between the commissioners and the people; that the railroad company is not a party thereto, has no interest in the money raised by the tax until collected, and can not maintain a mandamus to compel its payment. *Board, etc.,* v. *Louisville, etc., R. W. Co.,* 39 Ind. 192; *Sankey* v. *Terre Haute, etc., R. R.*

*Co.,* 42 Ind. 402; *Jager* v. *Doherty,* 61 Ind. 528; *Bittinger* v. *Bell,* 65 Ind. 445.

The seventh specification avers that the tax was not voted as aid to construct said railway, but to relieve certain persons from paying a bond which they had given to secure the said sum of money. This alleged defence existed, and could have been properly made, if used at all, before the county board, while the proceedings were *in fieri,* but it is too late now to set it up in this collateral' proceeding. See former authorities cited.

Again, this specification anticipates an improper application of the money by the board when raised, which, if true, would be no ground for enjoining the collection of the tax legally levied. *Board, etc.,* v. *Brown,* 28 Ind. 128; *Board, etc.,* v. *Brown,* 28 Ind. 161; *Wilson* v. *Board, etc.,* 68 Ind. 507; *Bish* v. *Stout,* 77 Ind. 255.

" Certain persons," not even alleged to have been citizens, might have given a certain bond, the condition and terms of which are not specified, but that would not prevent the citizens from voting the aid, especially with that knowledge, nor interfere with the appropriation of the money by the railroad company after they received it, any more than would an assignment. See the case of *Faris* v. *Reynolds, supra.*

The board of commissioners, when the tax is collected, can only order the money paid to the railroad company, and the treasurer can only so pay it.

The eleventh specification sets forth the same facts as in the seventh, though in a more specific manner, but is subject to the same reasoning and decision as the seventh.

We think there was no error in sustaining the demurrers to these various specifications in the complaint.

Under the motion for a new trial, appellants object to the sufficiency of the evidence, and complain of the admission of illegal testimony.

The trial was had upon issues in relation to the condition of the railroad when the petition was filed, as to whether it

was then completed, or in a condition in which aid could be voted to its construction. While, perhaps, the demurrers might also have been properly sustained to these additional specifications, as the result which we have reached has the same effect, we deem it unnecessary to investigate and decide the cross errors assigned.

The facts in relation to the condition of the road are shown by the evidence to be as follows:

The road had been partially constructed by another company in the year 1879 and spring of 1880. The grade was partially made, the road-bed surfaced up, the ties and iron laid down, and the track, the greater part of the way, insufficiently ballasted. The cuts and fills in the grade were not over two-thirds wide enough, and the ditches on the sides had not been opened, nor the necessary side-tracks and switches constructed.

In May, 1880, the Lake Erie and Western Railway Company became the owner of the road, put upon the track and was running both passenger and freight trains; also, put a construction train to work on the track, which continued to work on the same until long after the filing of the petition herein, and up to the time of the trial, and the road-bed, with all the necessary switches and side-tracks required to transact business properly in the beginning, were still in an incomplete condition. After the Lake Erie and Western R.W. Company got the road, the bridges had to be cut down and lowered in order to correspond with the grade, the cuts had to be widened and the ditches opened on either side, to give the road-bed proper drainage; the embankments had to be widened and strengthened in order to hold the proper amount of ballast and to safely operate the road. These things, except the lowering of the bridges, together with the construction of the switches and side-tracks, and the filling around depot grounds, were mostly done with the use of the construction train; a large sum of money had been expended by said company in said

work after the filing of the petition herein, and it would take considerable more to complete the road as it should be.

We think the evidence tends strongly to support the finding of the court, that the road was in a condition in which aid might legally be voted to assist in its construction. And the finding of the court can not be disturbed upon the weight of the evidence.

Upon the correctness of the ruling of the court below in permitting certain questions to be asked of the witnesses by defendant and answered, we shall only notice those which appellants have discussed in their brief, considering the others stated in the motion for a new trial as waived.

A witness, Thomas H. Perry, was asked the following question : " When, in your opinion, is the construction of a railroad completed ? " The special bill of exceptions containing this question does not contain any answer to the question ; and the general bill of exceptions, containing the evidence given, contains no objections to any of the evidence given, nor does it contain any of the questions. We can not, therefore, tell whether this question was answered, or, if answered, what the answer was, and can not hold that appellants were injured by the asking of the question.

The same witness was asked the following question : " Was this road completed in May, 1881 ? " To which he answered, " It was not."

This witness was an engineer of twenty-seven years' experience in railroading. He had fully testified as to the facts of the condition of the road, and in answer to this question testified that the road " was not completed in March, or May, or June, 1881, and, if maintained as it then was, would not have been safe for the transportation of freight or passengers, and could not have continued to do business on the line of the road as originally constructed." And he then gave a full explanation of the reasons why it was incomplete.

The objections to this testimony are, that the question as to whether the road was completed at a particular time is one of

Hilton *et al. v.* Mason, Treasurer.

law and fact upon which the witness was incompetent to testify, and that the question was leading. This question was put to an expert witness, fully competent to testify as to the fact of the completion of the road; it involved a question of science and skill, and we think the testimony was competent.

A leading question involving the condition of a thing at a particular time, put to a scientific witness, is not objectionable under ordinary circumstances. Leading questions are not necessarily erroneous. *King* v. *Enterprise Ins. Co.*, 45 Ind. 43. While they are not permissible generally in the examination of a witness in chief, yet the allowing of them is largely in the discretion of the trial court; and the Supreme Court will not reverse a case upon that ground unless it appears that there has been a clear abuse of that discretion, whereby the opposite party has been injured. *Shockey* v. *Mills*, 71 Ind. 288 (36 Am. R. 196); *Miller* v. *Wildcat G. R. Co.*, 52 Ind. 51.

If a party is not injured by the answer, the question, being leading, is harmless. *Culbertson* v. *Stanley*, 6 Blackf. 67.

In the case at bar, the witness did not answer the question simply as a leading one, but stated the condition of the road, as to completeness at that time, the same as if he had been asked to state its condition, in which form the question would have been unobjectionable; considering the answer, we can not see wherein appellant could have been injured by the form of the question, and in its permission we do not see any abuse of the court's discretionary power.

Other similar questions were asked of other expert witnesses, which we rule upon in the same way.

Testimony in relation to the amount of money expended on the construction of the road after April, 1881, and as to how much it would yet take to finally complete the road, was also objected to.

Under the issues upon which the case was tried, we think this evidence was pertinent and admissible. If it required the expenditure of a large amount of money after April, 1881,

in order to complete the road, that fact certainly tended to prove that the road was not completed before that time.

We find no available error in the admission of the testimony, nor in overruling the motion for a new trial.

The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the court below be and it is in all things affirmed, with costs.

Filed Dec. 15, 1883.