Filed Mar. 4, 1884.

———————◆———————

No. 10,966.

BROWN v. OWEN.

PRACTICE.—*Evidence.—Harmless Error.*—Where the answer to an improper question is harmless, there is no available error.

SAME.—*Immaterial Evidence.*—Where the answer to a question asked could not, of itself, be material, and there is no offer to prove other facts which would make such answer material, the sustaining of an objection to such question is not erroneous.

SAME.—*Motion to Strike out Evidence not Objected to.*—Where evidence is admitted without objection, a subsequent motion to strike it out comes too late.

SAME.—*Cross-Examination.*—Cross-examination which relates to the same subject-matter as the examination-in-chief is proper.

SAME.—*Immaterial Evidence.*—The admission of evidence which, though immaterial, is harmless, is not available error.

SAME.—*Impeaching Question.*—A question seeking to impeach the witness upon an immaterial point is improper.

LANDLORD AND TENANT.—*Cropper not Insurer Against Weather.*—One who agrees to farm the land of another and to deliver to the latter his share in grain is bound to use only ordinary care in gathering the crop, and is not an insurer against loss from bad weather.

From the Rush Circuit Court.

*J. S. Scobey*, for appellant.

*W. A. Cullen* and *B. L. Smith*, for appellee.

ZOLLARS, J.—Action by appellant against appellee. The case as made by the complaint, so far as it need be here stated, is as follows:

In August, 1881, appellant rented forty acres of his land to one Thomas Hardesty. Hardesty agreed to sow wheat upon the land, and in a good farm-like manner harvest and thresh the crop that might be raised, and for rent deliver to appellant one-half of the amount in the bushel, delivered at the threshing machine. Hardesty sowed the wheat. Just before harvest, in 1882, he sold his interest in the wheat to appellee, who assumed, and agreed to perform, Hardesty's contract with appellant. Appellee is charged with a violation of the contract, in that he neglected to harvest ten and one-half acres of the wheat, and failed to have threshed in proper time that harvested from twenty and one-half acres, by which failure it was exposed to wet and bad weather and damaged. By reason of these neglects and failures, it is averred, appellant was damaged in the sum of $196.57.

The case was put at issue by a general denial, with an agreement that all defences might go in under it. There was a trial by a jury and verdict for appellee. Over a motion for a new trial, judgment was rendered for appellee. From this judgment, appellant prosecutes this appeal. Under the assigned error in overruling the motion for a new trial, a number of questions upon the admission and exclusion of evidence are discussed by appellant's counsel, which we notice *seriatim*. In order that the objection urged may be properly

understood, it may be noticed that the contract between appellant and Hardesty was not in writing. As detailed in evidence, it was that Hardesty should sow the wheat upon forty acres of appellant's land, and at threshing time, at the machine, give him one-half in the bushel.

So far as we have discovered, there was no express undertaking or agreement as to any particular time or manner of doing the harvesting or threshing. The law, doubtless, implied that both should be done with such care and skill, as to time and manner, as would meet the requirements of good husbandry.

The claim of appellee was and is that his conduct met this requirement; that he could not harvest all of the wheat, because of rainy weather and the low, wet and muddy condition of the land; and that the wet weather prevented an earlier threshing of the wheat, etc. The jury, upon the whole evidence, concluded that the claim was well made and returned a verdict for appellee. If the facts are as found by the jury, appellee is not liable.

We can not disturb the verdict upon the weight of the evidence.

On cross-examination of Hardesty, appellee's counsel asked him if appellee had other wheat besides that purchased of Hardesty. Appellant objected to this question, and now insists that it was intended to elicit an insufficient excuse for delay and failure in harvesting the wheat upon appellant's land. The answer to the question is a sufficient answer to the objection. It rendered the question entirely harmless, if it was open to the objection urged against it. The answer was that appellee had other wheat, but that it was harvested before he bought the wheat of Hardesty. It is very apparent that having the other wheat could not and did not make any delay in harvesting that upon appellant's land. Appellant offered, but was not allowed, to show by Hardesty, that adjoining the wheat sowed by him and sold to appellee, there

was ten acres of wheat upon lower ground. This is the whole of the offer. We can not understand what possible bearing upon the issue between the parties the offered evidence could have had. It is said in appellant's brief that the purpose was to show that this wheat was upon lower ground and was harvested, and that this was competent to meet appellee's proof that he could not harvest his wheat because of the low and muddy condition of the land. The argument goes beyond what is shown by the record. The record contains no offer to show that the wheat upon the adjoining ten acres was or could have been harvested. For aught that appears, it may have rotted on the ground. We need not decide what might have been the proper ruling, had the offer been as full as stated in the brief.

It is insisted that the court below erred in refusing to strike out certain questions and answers. It is a sufficient answer to this to say that no objections having been made to either questions or answers, the objection, by a motion to strike out comes too late.

We may add that we regard the questions and answers as of but little consequence to either party.

On direct examination, the witness Barlow, in response to questions by appellant, stated that he was engaged in cutting the wheat for appellee; that he did not finish the cutting, and that the wheat was very ripe; and further, that the difference between the ground cut over and that not cut over was that the latter was black ground and lower. On cross-examination, appellee asked the witness to state the character of the ground, the condition of the weather, and the kind of wheat it was. The objection urged is that this was not a proper cross-examination. We think differently. It has reference to the same subject-matter inquired about by appellant.

Appellee, in testifying in his own behalf, stated that the wheat, or a part of it, lay unshocked for a day, or a day and a half after it was cut and bound. Immediately following this, he was allowed to state that at that time laborers were

Brown v. Owen.

scarce in the neighborhood. This was objected to as immaterial and improper. This answer confines the scarcity of laborers to the time the wheat lay unshocked, which was but a short time, as limited by the answer. Whether evidence of scarcity of laborers would have been competent as affording any excuse for delay in harvesting the crop, we need not decide. The evidence as here introduced was clearly harmless to appellant, as there is no evidence that appellee made any effort to procure such laborers, and he in no manner attempts to justify any delay or failure in the harvesting by such scarcity of laborers.

Appellee's statement that he could do but little threshing on account of the wet weather, was to meet the evidence on the part of appellant that he owned a machine and was engaged in threshing wheat for others. The purpose of appellant's testimony was to show that as appellee was threshing for others, he neglected to harvest and thresh the wheat in controversy. Appellee met this with the above statement in relation to the wet weather. We think it was competent.

And so, too, we think the evidence on the part of appellee, that a large amount of wheat was grown in the neighborhood, that it sprouted in the shock, and was thus damaged by the wet weather, was also competent. Appellee was charged with having allowed the wheat in controversy to sprout in the shock, and thus be wasted. His defence is that on account of the wet weather this could not be prevented, and that he exercised the proper and usual care in gathering and threshing the crop. The fact that other crops in the neighborhood were damaged by the wet weather, in like manner with that in dispute, was competent evidence to go to the jury, as tending to show that appellee's negligence was not the cause of the damage complained of. He was bound to use ordinary care and prudence in gathering the crop, but he was not an insurer against loss from wet weather. If the weather was such that it was impossible to gather the crop without loss, and he used ordinary care to prevent a loss, he

is not liable, under the contract, for such loss as could not be thus prevented.

After the close of the case in rebuttal, appellant recalled appellee and asked him if he had not at a certain time and place said to appellant, that he intended to pay him for the wheat not cut. An objection was sustained to the question. Appellant's counsel states that the purpose of the question was to impeach appellee by a contradiction of his answer. We are not informed by counsel, nor by the record, what the answer was expected to be. There is a statement in the record that appellant offered to prove by himself and another, that appellee made the statement embodied in the question. Why he did not make that proof is not shown. The court made no ruling on the offer, nor did appellee or the other party testify. The record upon this point is too defective to present any question to this court. And besides, the point upon which it was proposed to impeach appellee was not material and pertinent to the issue being tried. The action is not based upon any such statement by appellee, nor did appellant seek to elicit an answer for the purpose of strengthening his case. See *Paxton* v. *Dye*, 26 Ind. 393; *Fogleman* v. *State*, 32 Ind. 145.

Finding no available error in the record the judgment is affirmed, with costs.

Filed March 7, 1884.