## CHAPMAN *v.* THE STATE.

[No. 19,657.   Filed October 24, 1901.]

CRIMINAL LAW.—*New Trial.*—*Verdict Contrary to Law.*—An assignment in a motion for a new trial in a criminal cause that the verdict was contrary to law is sufficient to require the Supreme Court to determine whether there is an absence of evidence in support of the verdict as a whole or of some fact essential to the existence of the crime charged. *pp. 302, 303.*

Chapman *v.* State.

ARSON.—*Evidence.*—*Sufficiency.*—*Corpus Delicti.*—In a prosecution for attempted arson the evidence showed that an empty cigar box with a hole in the top, smoke and grease marked, as if it had served to hold a burning candle, was found lying on the ground under the edge of a frame house. There were no smoke or heat marks on the house, nor other unusual combustible material present. There was evidence that a cigar dealer gave accused a cigar box similar to the one found, but it was not established whether it was before or after the box was found under the house. The accused was on unfriendly terms with the son of the owner and occupant of the house, but it was not shown that he knew that the son lived in the house with his father, or that he had a father living. *Held,* that the evidence was not sufficient to support a conviction. *pp. 301-305.*

From Clark Circuit Court; *James K. Marsh,* Judge.

William Chapman was convicted of an attempt to commit arson, and appeals. *Reversed.*

*L. A. Douglass* and *H. W. Phipps,* for appellant.

*W. L. Taylor,* Attorney-General, *C. C. Hadley, Merrill Moores* and *F. M. Mayfield,* for State.

HADLEY, J.—Appellant was convicted by a jury upon an information charging him with an attempt to commit arson. His motion for a new trial was overruled and he appeals. The overruling of his motion for a new trial is assigned as error. As a ground for a new trial it is alleged that the verdict is contrary to law. Under the assignment it is argued that there was no evidence to sustain the verdict, and hence the verdict is contrary to law.

The uncontroverted and only material facts are these: William Routh, an old man, owns a house in the city of Jeffersonville, of the value of $800, and resides therein with his wife and son, Edward, who is an unmarried man of mature years. The house is frame, and the bottom is six or seven inches above the ground. About May 10, 1900, William Routh went out of his house between seven and eight o'clock in the morning, and found an empty cigar box on the ground under the edge of his house. The box was of usual form, and of a size to hold 100 cigars, and was

branded "National Five." "The top had a hole cut in it, and it was smoked black, and pretty nearly burned, and looked like a candle had been in it and burned out." "There was some substance in the bottom of the box that looked like candle grease, but there was no candle or anything else in it." There were no smoke or heat marks on the house, nor other unusual combustible material present. William Routh knew the defendant, who lived near Jeffersonville, only by sight, and never had any dealings or words with him. The chief of police without Routh's invitation called at the house on the 12th of May, which was two or three days after the box was found, and got it; on the 14th or 15th of May a cigar dealer gave the defendant an empty cigar box similar to the one found by William Routh, except that it had no hole in the lid, nor smoke and grease marks upon it. He could not identify the box as the one he had given the defendant, but the general characteristics were the same; the defendant four or five years before had assaulted Edward Routh at a time when the latter was accompanying the former's divorced wife, and had subsequently attempted to stop him, or speak to him, and a bad feeling existed between them. The defendant denied having obtained a cigar box of that size from the dealer, denied having placed a box of any kind on the premises of William Routh, and denied knowing where Edward Routh lived, or that he had a father. Witnesses both sustained and assailed the defendant's character.

The Attorney-General submits that while the sufficiency of the evidence to sustain the defendant's conviction is weak, this court has no power to give him relief under his assignment of error, as such action will require us to weigh the evidence, which we have no authority to do.

Section 1911 Burns 1901, prescribing the grounds for a motion for a new trial in criminal causes, in part reads: "Ninth. When the verdict of the jury or the finding of the court is contrary to law or the evidence." The technical

distinction between a verdict that is contrary to law and one that is contrary to the evidence has never been clearly drawn, nor do we deem it necessary to attempt to define it here. The verdict under consideration is contrary to law, or we have no question before us. It seems clear to us that a verdict is contrary to law when it appears to have been reached by processes denied by the law. Therefore a verdict unsupported by any evidence is contrary to law. And a verdict without any evidence in support of some fact essential to the existence of the crime charged is equally contrary to law. A more restricted interpretation would render the statute meaningless. In such cases we are not called upon to weigh the evidence, but only to determine where there is an absence of evidence in support of the verdict as a whole, or of some material fact. *Lee* v. *State,* 156 Ind. 541, 545.

The assignment of error is therefore sufficient to require us to determine whether the record brings the case within this principle. *White* v. *State,* 136 Ind. 308, 312; *Stout* v. *State,* 78 Ind. 492.

Recurring to the evidence, the weakness conceded by the Attorney-General is apparent. With respect to the *corpus delicti,* an empty cigar box with a hole in the top, smoke and grease marked, as if at some time it had served to hold a burning candle, found lying on the ground under the edge of a frame house, is the sum total of the evidence upon which the attempted arson rests. This, standing alone, and aided by all legitimate inferences, but feebly tends to prove the existence of a crime; and when associated and viewed with the other uncontroverted and co-existing facts, its probative force vanishes into nothing. The box found was of the usual form, and of a size to hold 100 cigars. From this we know as a matter of common knowledge that the box was about four inches deep, and when placed on the ground under the house its top was within two or three inches of the frame of the house. We likewise

know that a lighted candle from one to two inches long, or long enough to make it possible for the blaze to reach the wood, burning on the top of the box under the house, until every fragment of the candle was consumed, would scorch or smoke the house, if not fire it. The absence of any part of the wick, and of any unmelted part of the body of the candle, from both the hole and bottom of the box, and of all smoke and fire marks from the house, is evidence of the highest character that no candle burned out from the top of the box at that time and place; and if the empty box, without lighted candle, or other means of combustion, was placed under the house, even with design, it is irrational to believe that it was done with intent to set it on fire. Incredulity is further strengthened by the fact that there was no other combustible material present, and no other means, or evidence of other means, to ignite the house. These facts taken together, rather than justify inference of attempted arson, forcibly repel any such inference.

Without any evidence worthy to be classed as such that the crime was committed, it would seem to be supererogation to pursue the discussion further. We deem it proper, however, to add that as the record presents the case to us there was no sufficient evidence of motive, or of incriminating circumstance. As to motive, nothing is shown to create in the defendant a reason, or desire, to injure William Routh, the owner of the house. The two were not acquainted, and had had neither dealings nor words with each other. The defendant did not reside in Jeffersonville. Edward Routh, whom the defendant assaulted years before, and with whom he was not on friendly terms, was a man of mature years, and there was absolutely no evidence or fact from which it might be inferred that the defendant knew where Edward lived, or that he lived with his father. The only fact attempted to be established, besides the motive, as tending to prove the defendant's guilt, was that a dealer in cigars gave to the defendant the empty box found by Wil-

liam Routh under his house. And this attempt fell far short of being successful. According to the positive testimony of the chief of police, a witness on behalf of the State, he procured the box of William Routh on the 12th day of May, 1900, which was two or three days after it had been found by Routh under his house. The testimony of the dealer, another witness for the State, was that on the 14th or 15th day of May he gave a similar box to the defendant. Taking these dates as fixed by the witnesses, and the testimony of the dealer is both worthless and incompetent. There may have been. a mistake by one 'or the other; but who made it? And what was it? Without evidence we have no right to change either as given by the witnesses; neither had the jury. The duty rested with the State to establish by evidence the true date consistently with its theory of the defendant's guilt before asking the court or jury to consider the giving of the box as a circumstance in the case.

We are unable to view the conviction of the defendant as having been reached by a due administration of the law. The judgment is therefore reversed, with instructions to grant the defendant a new trial. The clerk will issue the proper notice for a return of the prisoner.