## CARRIER *v.* STATE OF INDIANA

[No. 28,592. Filed December 13, 1949.]

Young, J., dissents with opinion.

Jasper, C. J., concurs in dissenting opinion.

*Rowland H. Jackson,* and *Amos W. Jackson,* both of Versailles; and *Hugh D. Wickens,* and *Hubert E. Wickens,* both of Greensburg, for appellant.

*J. Emmett McManamon,* Attorney General, *Charles F. O'Connor* and *Merl M. Wall,* Deputy Attorneys General, for appellee.

EMMERT, J.—The appellant was charged with the offense of burglary as defined by § 10-701, Burns' 1942 Replacement (Acts of 1929, ch. 54, § 2, p. 136; 1935, ch. 212, § 1, p. 1017; 1941, ch. 148, § 4, p. 447).[1] After trial by jury and verdict of guilty, the judgment of conviction sentenced him to imprisonment in the state prison for a term not less than ten years nor more than twenty years, and disfranchised him for a period of ten years. His motion for a new trial, which assigned as causes therefor, (1) "That the verdict of the jury is contrary to law," and, (2) "That the verdict of the jury is not sustained by sufficient evidence," was overruled, and this is the error assigned upon appeal.

The affidavit, executed by John Bradshaw, charged the appellant did "feloniously and burglariously, break

---

[1] "Whoever breaks and enters into any dwelling-house or other place of human habitation with the intent to commit any felony therein, or to do any act of violence or injury to any human being, shall be guilty of burglary in the first degree . . ." Section 10-701, Burns' 1942 Replacement.

and enter into the dwelling house, being a place of human habitation, of John Bradshaw, in Ripley County, Indiana, with the intent then and there feloniously and burglariously" to commit the felony of larceny.

The appellant challenges the sufficiency of the evidence to prove the material allegations that he broke and entered "the dwelling house, being a place of human habitation." The state contends that the following testimony is sufficient to sustain the verdict. In view of the limited issue here presented and the importance in determining the character of the building, all the testimony on that subject is stated in full as follows:

Direct examination of John Bradshaw (prosecuting witness):

"Q. Do you maintain a home in Osgood?
A. Yes.
Q. Do you own any other place that you stay?
A. A summer fishing camp on the creek.
Q. That camp is on the creek?
A. Yes.
Q. Do you live there?
A. We go there practically every weekend through the summer, sometimes through the week."

Cross-examination of witness Olive Fields:

"Q. I will ask you if you did not make a statement to a witness, after this occurred, in front of the drug store at Osgood, that you were the one that broke into the house and took out this radio?
A. No.
Q. Didn't you make the statement that it was a pretty nice place?
A. I made that statement when I peeped under the door, I said . . ."

The direct examination of Juanita Hensler:

"Q. On that day, did you see Mr. Carrier do anything with reference to this cabin?

A. Yes.

Q. What was that?

A. I saw him get in the car and get out with a piece of tire tool and break the lock off the door.

Q. After that, what did he do?

A. He went inside and got a radio and a sheet.

Q. What did he do then?

A. He put them in the car and drove off."

Cross-examination of Carl Fields:

"Q. And if you know, when was it Mr. Carrier got the tire tool and broke the lock?

A. After we came back he was sitting down there smoking a cigarette and he called me up there and I looked under the door. He said, 'Some pretty nice stuff in there.' He got the tire tool and broke the lock off.

Q. What happened then?

A. He handed me the lock and I threw it over the hill and he went in and got the sheet and radio."

Although upon review of evidence on appeal we will only consider the evidence most favorable to the state, a mere scintilla of evidence on any essential allegation of the offense charged is insufficient to sustain a conviction. *Sullivan* v. *State* (1928), 200 Ind. 43, 161 N. E. 265. If any essential allegation of the offense charged is not proved, the verdict is not sustained by sufficient evidence and is contrary to law. *Price* v. *State* (1933), 204 Ind. 316, 184 N. E. 181; *Chapman* v. *State* (1901), 157 Ind. 300, 61 N. E. 670.

Burglary at common law was the breaking and entering in the nighttime of the dwelling house of another

with intent to commit a felony therein. 9 C. J. 1009, § 2; 12 C. J. S. 664, § 1; 9 Am. Jur. 239, § 1; I Bishop, *Criminal Law*, § 559, pp. 407, 408 (9th Ed.).[2] Although § 10-701, Burns' 1942 Replacement, does not require the breaking and entering to be done in the nighttime, it does use the term "dwelling-house" the same as the common law, and it will be presumed that the legislature intended to adopt the common law meaning of the term. *Dunville* v. *State* (1919), 188 Ind. 373, 123 N. E. 689; *State* v. *Berdetta* (1880), 73 Ind. 185; *Ledgerwood* v. *State* (1893), 134 Ind. 81, 89, 33 N. E. 631. It will be noted that the affidavit recited that the dwelling-house was "a place of human habitation."

"The word 'dwelling' imports a human habitation." *Gaines* v. *State* (1921), 191 Ind. 262, 265, 132 N. E. 580. "According to the common law conception, the crime of burglary is primarily an offense against the security of the habitation, for, as it was expressed at an early date, a man's house is his castle, and its security must not be lightly invaded . . ." 9 Am. Jur. 240, § 2. "Burglary is an offense not against mere property but against another's habitation, the gist of the crime being the felonious invasion of a man's dwelling." 3 Burdick, *Law of Crime*, § 698, p. 20. See also 4 Broom & Hadley,

---

[2] The early books referred to the building as a "mansion-house." "The definition of a burglar, as given by Sir Edward Coke, is 'he that by night breaketh and entereth into a mansion-house, with intent to commit a felony.' . . .

"As to the place wherein burglary can be committed, it must, at common law, according to sir Edward Coke's definition, be in a mansion-house: and therefore to account for the reason why breaking open a church is burglary, by the common law, he quaintly observes that it is *domus mansionalis Dei*." 4 Broom & Hadley, *Commentaries on the Laws of England*, pp. 271, 272 (1869 Ed.).

*Commentaries on the Laws of England*, p. 270 (1869 Ed.) ; 9 C. J. 1021, § 30; 12 C. J. S. 678, § 16.[3]

"The character of the house is generally immaterial if it is occupied as a dwelling. The house must be occupied as a dwelling house, and not merely be suitable or intended for such purpose. The owner or occupant, or some member of his family, or a servant, must sleep there. If it is so occupied the temporary absence of the occupant will not prevent it from being the subject of burglary as a dwelling house; but a house, although furnished as a dwelling house, loses its character as such for the purposes of burglary if the occupant leaves it without the intention to return. Occasionally sleeping in a house is not enough to make it a dwelling house. . . ." 9 C. J. 1022, 1023, § 31. See also 12 C. J. S. 679, § 17; 9 Am. Jur. 251, § 21; 4 *Blackstone's Commentaires* (Wendell's Ed.), pp. 239, 240; Clark & Marshall, *Law of Crimes*, p. 596 (2d Ed.), § 401; 85 A. L. R. 428.[4]

---

[3] "Burglary is, like arson, an offense especially against the habitation, that is, against the security of the home." 1 McClain, *Criminal Law*, p. 471, § 494.

"Burglary at common law is peculiarly an offense against the security of the *habitation*, and not an offense against the property as *property*." Clark & Marshall, *Law of Crimes*, pp. 596, 597, §401 (2d Ed.).

"Dwelling-places are built to protect people from the physical elements and from the violence of beasts and men. Therefore offences against the habitation are indirectly such also against the person. Of these, the common law has two, burglary and arson." 1 Bishop, *Criminal Law*, p. 407, § 559 (9th Ed.).

[4] "A house wherein a man sometimes resides, and which the owner has only left for a short season, *animo revertendi*, may be the object of burglary, though no one be in it at the time of the fact committed. The mere casual use, however, of a tenement, will not suffice; and, therefore, the circumstance of a servant sleeping in a barn, or porter in a warehouse, for par-

We cannot take judicial notice that a summer fishing camp is a dwelling-house. There was no evidence that anyone ever slept there, or if anyone did, at what intervals or for how long. The fact that the appellant may have stolen a "sheet" did not prove that it was a bed sheet, or that there was a bed there, or if there was a bed there, that any member of the prosecuting witness's family ever slept upon it. The appellant's statement that there was "some pretty nice stuff in there," which included the radio, did not make the building a dwelling-house, and a place of human habitation. It could scarcely be contended that this evidence justified an inference that the prosecuting witness had two "mansion-houses," nor was there any evidence that the place was ever used as one of two places of residence. See *West Virginia* v. *Bair* (1932), 112 W. Va. 655, 166 S. E. 369, 85 A. L. R. 424; *Harris's Case* (1795), 2 East Crown Law Cases 498; *Thompson's Case* (1796), 2 East Crown Law Cases 498; *State* v. *Jenkins* (1858), 50 N. C. 430; *Scott* v. *State* (1885), 62 Miss. 781; *Bell* v. *State* (1866), 20 Wis. 630; *Smith* v. *State* (1920), 80 Fla. 315, 85 So. 911 and authorities therein cited.

The verdict was not sustained by sufficient evidence, and is, therefore, contrary to law. Judgment reversed, with instructions to sustain appellant's motion for a new trial.

YOUNG, J., dissents with opinion in which JASPER, C. J., concurs.

NOTE.—Reported in 89 N. E. 2d 74.

---

ticular and temporary purposes, will not so operate as to make a violent entry in the night, in order to steal, a burglary." 4 Broom & Hadley, *Commentaries on the Laws of England,* p. 272 (1869 Ed.)

## DISSENTING OPINION

YOUNG, J.—There is a substantial difference between common law burglary and first degree burglary as defined by our statute, and it is, of course, with burglary as defined by statute that we are concerned. At common law it was necessary to break and enter the dwelling house of another in the night with intent to commit some felony within same. 2 *Wharton's Criminal Law*, § 968 (12th Ed.). And at common law the dwelling house was frequently spoken of, and is referred to in the prevailing opinion in this case, as the "mansion house." Under our statute, quoted in Note 1 of the prevailing opinion, the breaking and entering need not be of the dwelling or mansion house but may be the breaking and entering of any "other place of human habitation." I cannot believe that a well furnished cabin upon a creek or a cottage upon a lake where a man may go for rest and recreation and to fish on weekends is not the subject of protection under the statute here involved.

We think the prevailing opinion is unduly influenced by the common law idea of burglary. The prevailing opinion says that the statute "does use the term 'dwelling house' the same as the common law and it will be presumed that the legislature intended to adopt the common law meaning of the term." I do not think the statute, or the cases cited, sustain this conclusion. The cases cited hold that where the legislature adopts the common law designation of an offense, and where a crime is defined by statute in generic terms, the courts will use the common law to aid in interpreting the statute, and that is substantially all the cases cited in the prevailing opinion say. But in the case before us, we do not have burglary defined in common law

language or in generic terms alone. We have a definite meaning given which is different from the common law definition and we have the place which may be the subject of burglary extended from the dwelling house or "mansion house" to any other place of human habitation.

In the prevailing opinion the case of *Gaines* v. *State* (1921), 191 Ind. 262, 132 N. E. 580, is quoted to the effect that the word dwelling, as used in our burglary statute, imports a place of human habitation. That is true, but the converse is not true. A place of human habitation is not necessarily the dwelling or "mansion house" of the owner. The words "or other place of human habitation" can have meaning only if they mean more or something different from dwelling house, and we must assume the additional words were used with purpose. The whole theory of the prevailing opinion is based upon a contrary idea and has led to a mistaken conception of the force and effect of the evidence, so frankly quoted by Judge Emmert.

The whole question in this case is whether there was evidence from which the jury reasonably could have inferred that appellant had broken and entered a place of human habitation. It seems to me that the evidence set forth in the prevailing opinion is abundantly sufficient for this purpose. The case was tried by a jury of citizens who knew the language of their neighbors. Words must be considered in their generally accepted meaning. For the witnesses' to say that a cabin on a creek is used as a summer fishing camp to which the owner went practically every weekend through the summer, and sometimes through the week, was sufficient to permit a jury of his neighbors to infer that this cabin was a place of human habitation. And when, in

addition to this, there is evidence that the place was nicely furnished and that a sheet, among other things, was stolen from it, the inference becomes stronger. It is not necessary that a place of human habitation be occupied by its owner continuously, or that it be his exclusive dwelling. If it be a place where he goes and "stays," as the owner in this case testified he did practically every weekend, it is a place of human habitation, whether it be a cabin on a creek or a "cottage" similarly used at one of our more pretentious lake resorts.

In the case of *State* v. *Bair* (1932), 112 W. Va. 665, 166 S. E. 369, 85 A. L. R. 424, the building broken into was located in a rural community and was used by its owner as a place of residence in vacation time and at weekends, particularly in warm weather, and it was held by the Supreme Court of Appeals of West Virginia that breaking into such a place constituted burglary. The jury reasonably could have inferred that the cabin in this case was in the same category.

In the prevailing opinion a number of cases are cited in support of the contention that the evidence set out does not justify an inference that the owner of the cabin had two "mansion houses." Again I want to say that it isn't necessary to break into a man's "mansion house" to be guilty of first degree burglary under the Indiana statute, and the cases cited in the prevailing opinion upon this point are predicated upon such different statutes and different facts as to make them of little persuasive value here and certainly they are not controlling.

In my opinion the evidence recited in the prevailing opinion in this case is sufficient to justify an inference by the jury that the cabin involved was a place of human habitation within the meaning of our statute. Whether or not it was, was for the jury, and, the jury

having so determined, we may not substitute our judgment for theirs.

I think the judgment should be affirmed.

JASPER, C. J., concurs in this opinion.

NOTE.—Reported in 89 N. E. 2d 74.