## SHIPMAN *v.* STATE OF INDIANA.

[No. 29,956. Filed June 26, 1962. Rehearing denied September 24, 1962.]

246

*Orr & Bridwell,* **and** *Richard M. Orr,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, *Richard M. Givan,* Assistant Attorney General, and *Richard C. Johnson,* Deputy Attorney General, for appellee.

ACHOR, J.—*This is an appeal from a conviction upon an affidavit in two counts; count one charging kidnaping and count two charging assault and battery upon a female child under the age of 16 years with the intent to gratify sexual desires of the appellant.

A verdict of guilty was returned on both counts and appellant was sentenced to life imprisonment on count one, and for one to five years on count two.

Appellant here argues the following grounds as cause for reversal. (1) That neither count is supported

---

*This case was assigned to the writer on January 19, 1962.

by sufficient evidence. (2) That the court erred in allowing certain questions to be answered pertaining to the presence of Vodka bottles in appellant's automobile which subject was raised for the first time on re-direct examination. (3) That trial court erred in allowing a physician to testify as to the presence of pain connected with the injuries sustained by the child, on the ground that such a question was immaterial and served only to inflame and prejudice the jury. (4) That the court erred in allowing a leading question to be answered over the objection of the appellant. (5) That the court erred in allowing a child of seven, and a child of nine and a half years of age to testify, on the ground that neither of said children were qualified witnesses. (6) That the court erred in allowing a witness to testify as to a previous similar conduct of the appellant, and, (7) that the court erred in refusing two of appellant's tendered instructions.

We will consider the contentions raised by appellant in the order above presented. Was the evidence sufficient to sustain the charge of kidnaping? Appellant argues first that it is not shown that he either forcibly carried away the person with criminal intent, or that the person "carried off" was taken without her consent. Neither of the above described acts are necessary elements of the crime of kidnaping. The statutes provides:

"Whoever kidnaps, or forcibly or *fraudulently carries off or decoys from any place within this state,* or arrests or imprisons any person, with the intention of having such person carried away from any place within this state, unless it be in pursuance of the laws of this state or of the United States, is guilty of kidnaping, and, on conviction, shall be imprisoned in the state prison

during life." Acts 1929, ch. 154, § 1, p. 477 [§ 10-2901, Burns' 1956 Repl.]. [Emphasis added.]

On July 31, 1959, appellant had been drinking beer at a tavern. He then left in his wife's 1951 Chrysler, and subsequently went to buy some whiskey. Delores Ann Morgan was a girl seven years old. Her mother had sent her to the grocery about four houses south from their residence located at 2215 North New Jersey, Indianapolis, Marion County, Indiana. At about 3:30 P.M. appellant came by in the automobile and offered to take her to the grocery. She consented and got into the automobile. However, contrary to his representation, appellant drove past the grocery, although it was pointed out to him. Instead, he drove out in the country with the child. The child asked him to take her home, but he did not do so. Instead, he drove about Marion County at various places with the child, keeping her with him in the car over night. During this time he had two minor collisions. On both occasions he appeared to have been drinking. On one occasion he stated that he was wanted by the police. In the afternoon of the second day, he returned the child to the vicinity of her home.

The facts above stated were sufficient to sustain the conviction for kidnaping. Contrary to the contention of appellant, it seems obvious that the consent which a seven year old child gives to an adult who decoys her away from her present place and environment by fraudulent representation does not negate the fact of kidnaping. In fact, the statute is expressly designed to penalize a person who "fraudulently carries off or decoys from any place" a child under the circumstances here presented. §10-2901, *supra*.

We next consider whether the evidence is sufficient to sustain the conviction as to Count 2 of the indictment. Upon this issue, appellant argues that it was not shown that he had the intent to gratify his sexual desires or to frighten the child.

What are the facts as bearing upon this issue? Appellant, a man of 35 years of age, enticed a seven year old child, who was a stranger to him, into his car and kept her with him over night and through the next day, over her protestation, returning her to the vicinity of her home the next afternoon with her clothes dirty and torn, her panties removed and her private organs injured, including a partial rupture of her hymenal membrane. Admittedly, there is no direct evidence that the child was molested by the appellant. However, there is evidence that the abuse to her person occurred while she was in the illicit control and custody of the appellant, and there is no evidence that the child committed the acts upon herself which caused the injury.

Thus the evidence against the appellant on Count 2 of the affidavit is circumstantial. However, this fact does not prevent it being sufficient to sustain a conviction. In the case of *McCoy* v. *State* (1958), 237 Ind. 654, 660, 148 N. E. 2d 190, 193, it was stated as follows:

"[A] conviction may be sustained wholly on circumstantial evidence, if there is some substantial evidence of probative value from which a reasonable inference, that establishes the guilt of appellants beyond a reasonable doubt, may be drawn. *Todd* v. *State* (1951), 230 Ind. 85, 90, 101 N. E. 2d 922; *Myers* v. *State* (1954), 233 Ind. 66, 67, 116 N. E. 2d 839.

"The true test of circumstantial evidence is whether 'in the order of natural causes and effects, the facts proved can be explained consist-

ently with the innocence of the prisoner.' *Beavers* v. *The State* (1887), 58 Ind. 530, 537." See also: *Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445.

Furthermore, in support of this count of the affidavit, there is evidence that on a former occasion the appellant had spoken to a girl who was then eight years of age while she was on her way to school, and told her that "Your mother told me to pick you up." He then took her by the hand and walked away with her for several blocks when she realized that something was wrong. She bit him on the hand to free herself and ran from him.

In our opinion, the facts in evidence are sufficient to convince men of reasonable minds as to the guilt of the accused beyond a reasonable doubt. They present a circumstance which, from ordinary experience, is much more consistent with the probability of guilt, not with the improbability of such guilt. Therefore, the evidence, although circumstantial, is sufficient to sustain the fact of intent as an element of the crime charged.

Appellant also contends that the judgment is not sustained by sufficient evidence, because the state failed to prove the venue of the action. The evidence upon this issue discloses that appellant took the child in question from a street near her home in Indianapolis, Marion County, and returned her the next day to the same area. Several witnesses testified that in the interim 24 hour period appellant was seen with the girl in his car at various parts in Marion County.

In the case of *Watts* v. *State* (1950), 229 Ind. 80, 89, 95 N. E. 2d 570, 574, it was stated as follows:

"No more direct evidence is required for the proof of venue than is required for the proof of any of the other matters required for conviction, and may be established by inference. *Davis* v. *State* (1925), 196 Ind. 213, 147 N. E. 766"

Under the above stated rule of law there was more than sufficient evidence to prove the venue in the case at bar.

Appellant also contends that the evidence was insufficient to sustain the judgment on the ground that under his plea of insanity, the state failed to sustain its burden of proof as to his sanity. We recognize the fact that the burden of proving sanity, when the issue is raised, is upon the state. We further acknowledge the fact that testimony of the two psychiatrists who examined the appellant conflict upon the issue of insanity. However, it was the responsibility of the jury to consider the issue of insanity upon all the evidence which was before it upon that subject. The rule is well established that in event of conflict of evidence, this court will not weigh the evidence on appeal. *Matthews* v. *State* (1959), 239 Ind. 252, 156 N. E. 2d 387; *Coffer* v. *State* (1959), 239 Ind. 22, 154 N. E. 2d 371; *Leslie* v. *State* (1959), 239 Ind. 462, 158 N. E. 2d 654; *Lenovich* v. *State* (1958), 238 Ind. 359, 150 N. E. 2d 884; *Mack* v. *State* (1957), 236 Ind. 468, 139 N. E. 2d 434.

We next consider appellant's contention that the trial court erred in admitting certain testimony on re-direct examination. The particular witness had testified on direct examination that on the evening of July 31 he had encountered the appellant with his car astraddle a fence at the side of the road, at which time he observed the child in the car with the appellant. He testified that he observed that the appel-

lant had been drinking. On cross-examination, the appellant's counsel interrogated the witness extensively on the subject as to what he saw and smelled. The witness testified that he smelled the appellant's breath, and saw four or five beer cans on the floor of his car. Thereafter, on re-direct examination the state asked the question: "Did you see any Vodka bottles thereabouts?" Attorney for appellant objected to the interrogation on the ground that the subject was not mentioned in either direct or cross-examination. The court overruled the objection, and it is this ruling which appellant here asserts as error. Furthermore, it is to be noted that the witness in response to the question answered, "No, I never saw nothing but beer cans." Then on re-cross examination counsel for appellant pursued the issue by asking the question: "Mr. Copple, could there have been Vodka bottle in the car and you not seen it?" to which the witness replied, "There could have been, yes, sir."

However, appellant's contention is not well taken. First, because it appears that the interrogation complained of by appellant was related to the intoxicated condition of the appellant, and that this subject matter was touched upon in both the direct and cross-examinations of the witness. If so, the testimony was properly admitted. Further, even though the court may have permitted the question and answer out of order, it does not appear that appellant was in anywise prejudiced thereby, first, because of the negative answer thereto, and secondly, because appellant was permitted and did pursue the same subject matter on re-cross examination, which was allegedly out of order on re-direct examination.

The scope of re-direct examination is within the sound discretion of the trial court, and although he

permits evidence to be introduced under such re-direct examination for the first time, this fact will not, under ordinary circumstances, constitute reversible error unless the opposite party is prevented from further interrogating the witness on the subject matter and of presenting other evidence in contradiction of the testimony adduced if it is prejudicial to his position in the case. These circumstances do not appear in this case. *Brazil Block Coal Co.* v. *Gibson* (1903), 160 Ind. 319, 326 66 N. E. 882, 885; *Wells* v. *State* (1959), 239 Ind. 415, 425, 426; 158 N. E. 2d 256, 260, 261-262.

The appellant urges that the trial court erred in overruling its objection to certain evidence given by a doctor, as a state's witness, to the effect that the amount of pain usually present with a rupture of the hymenal membrane "might be dependent upon the age of the individual." The objection made was: "It is an immaterial question."

An objection that a question illicits testimony which is immaterial is not sufficient to raise any issue on appeal. *Brown* v. *Owen* (1884), 94 Ind. 31.

Furthermore, it is to be noted that the subject matter was material to the question as to whether or not the injury suffered by the child may have been self-inflicted. It is not probable that a child would inflict such injury upon herself which involved "a certain amount of pain," especially in the presence of a stranger.

Next, appellant argues that it was error for the trial court to allow a leading question to be answered over appellant's objection. The question, objection, ruling of the court, and the answer are as follows:

"Q. Then did you proceed to put the handcuffs on the defendant?

MR. MARTZ: The prosecutor is leading the witness again. He can ask the question differently.

THE COURT: Every leading question is not objectionable. This is proper and will save some time.... Show the defendant's objection overruled.

A. Not to my recollection."

Whether a leading question is to be allowed is a decision largely within the discretion of the trial court. On appeal it must be shown that there was an abuse of discretion. *Webster* v. *State* (1934), 206 Ind. 431, 190 N. E. 52; *Seymour Water Co.* v. *Lebline* (1924), 195 Ind. 481, 144 N. E. 30. Also, to constitute reversible error, it must appear that appellant was substantially injured by the answer. *Hilton* v. *Mason* (1883), 92 Ind. 157; *Weik* v. *Pugh* (1884), 92 Ind. 382. It does not appear that the court abused its discretion in permitting the state to ask the question to which appellant objects, nor does it appear that appellant was in anywise injured by the answer.

Next we give consideration to appellant's contention that the trial court committed reversible error in allowing Delores Ann Morgan, a child of seven years of age, and Gail Frances James, a child of nine and a half, to testify.

The statute relating to testimony of children under ten years of age, is as follows:

"The following persons shall not be competent witnesses:

...

"Second. Children under ten [10] years of age, unless it appears that they understand the nature and obligation of an oath." Acts 1881 (Spec.

Sess.), ch. 38, § 275, p. 240 [§ 2-1714, Burns' 1946 Repl.].

The record discloses that the trial court examined both witnesses at length before ruling on their competency.

Delores Ann Morgan, when examined by the court, stated, in part, as follows:

"Q. Do you tell lies?

A. No.

. . .

Q. Why don't you tell lies? Don't get scared. We are just talking to you. No one is going to hurt you. Do you know why you don't tell lies?

A. No.

. . .

Q. Do you know you are supposed to tell the truth?

A. Yes.

Q. And you are not supposed to tell lies?

A. No.

. . .

Q. Would you ever tell a lie?

A. No.

Q. Do you know that when you are asked to tell something in court that you are asked to tell just the truth and not lie a bit, you know that?

A. Yes.

. . .

Q. Do you ever promise to do anything? Do you know what a promise is?

A. Yes.

. . .

Q. . . . Do you know what it means to keep your promise? Don't make a promise and not keep it, do you know that? Do you always keep your promises?

A. Uhuh.

> Q. Would you promise me something?
>
> A. Uhuh.
>
> Q. Would you promise me to tell the truth to-day?
>
> A. Yes.
>
> Q. And you would not tell a lie?
>
> A. No.
>
> Q. And you would keep your promise to me?
>
> A. Yes."

It would appear from the above colloquy that, although in earlier interrogation, the witness indicated that she did not know what an oath was, she did know what it meant to tell the truth and not to lie, which she agreed to do. [Her lack of knowledge regarding the meaning of the word "oath" can be attributed to the vocabulary of an ordinary seven year old child.] Her answer, taken as a whole, indicated that she knew the difference between telling the truth and lying. Under the above circumstances we cannot say that the court erred in permitting the witness to testify.

Gail Frances James, when examined by the court, stated in part as follows:

> "Q. Do you know what it means to tell the truth?
>
> A. Yes.
>
> Q. Do you tell the truth?
>
> A. Yes.
>
> Q. You know I have to—you have to hold up your right hand and promise to tell the truth? Anything you say here today has to be the truth. You know that?
>
> A. Yes.
>
> Q. You will be bad if you don't, won't you?
>
> A. Yes.
>
> Q. Will you promise to do that, if I ask you to promise you will tell the truth?

A. Uhuh.

Q. Did your Mommy tell you anything to do?

A. She said to tell the truth."

Whether a person under the age of ten shall be allowed to testify is a decision in the discretion of the trial court, and it requires a showing of manifest abuse of such discretion to require reversal. *Martin* v. *State* (1959), 239 Ind. 174, 154 N. E. 2d 714; *Butler* v. *State* (1951), 229 Ind. 241, 97 N. E. 2d 492; *Tyreel* v. *State* (1912), 177 Ind. 14, 97 N. E. 14.

We cannot say that the record before us shows an abuse of discretion on the part of the trial court in allowing the two witnesses to testify.

Appellant next urges that it was error to allow Gail Frances James to answer questions pertaining to his conduct prior to the act charged, over objection, for the reason that said witness was a surprise witness, and for the further reason that evidence of other misconduct can be admitted only after the crime charged is clearly proved. Appellant cites no authority for the proposition that the evidence should have been excluded for the reason that the witness was a surprise witness. If the defendant does not file a motion asking the state to set out its witnesses, then in the absence of such a motion, the effect of the failure of the prosecuting attorney to endorse the names of the material witnesses on the affidavit as provided by Acts 1905, ch. 169, §119, p. 584 [§9-909, Burns' 1956 Repl.] is merely to prevent the state from asking for a continuance for their absence. *Short* v. *State* (1878), 63 Ind. 376; *Siberry* v. *State* (1893), 133 Ind. 677, 33 N. E. 681; *Ruffenbarger* v. *State* (1921), 190 Ind. 616, 131 N. E. 514.

260

Furthermore, with respect to the admissibility of this testimony, the rule is well settled that when insanity is an issue, evidence of relevant conduct of the person charged with the crime is admissible. *Kiefer* v. *State* (1960), 241 Ind. 176, 169 N. E. 2d 723; *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769, Cert. Den. 336 U. S. 940, 69 S. Ct. 744, 93 L. Ed. 1098.

Finally, appellant urges that the trial court erred in refusing his tendered instructions 2 and 5.

Appellant's tendered instruction 2 was as follows:

"The defendant is not to be held responsible for the specific intent if he was *to* drunk for a conscious exercise of the will to the particular end, or, in other words, too drunk to intend the intent and did not entertain it in fact."

As noted by the appellant, the refusal of the trial court to give the above quoted instruction was held to be error in the case of *Eastin* v. *State* (1954), 233 Ind. 101, 117 N. E. 2d 124, although the court criticized the form of instruction. However, the Eastin case is distinguishable from the case at bar, in that the trial court apparently did not give an instruction to the effect that intoxication of the defendant may be considered by the jury in determining the question of intent. In the case at bar, the court in another instruction correctly instructed the jury in the matter of intoxication and intent. Defendant's tendered instruction 1 given as court's instruction 40, is as follows:

"In order to convict the defendant under the statute for Kidnapping or Assault and Battery with Intent to Gratify Sexual Desires, it is necessary to satisfy the jury beyond a reasonable doubt that the defendant entertained the specific intent charged and performed the acts to

accomplish the specific purpose. Mere drunkenness does not excuse the offense but it may produce a state of mind which incapacitates the party from forming or entertaining a specific intent as the mental condition is such that a specific intent cannot be formed. Whether this condition is caused by drunkeness or otherwise, a party cannot be said to have committed an offense when a necessary element of which is that it be done with a specific intent. If the jury finds that this specific intent is missing from this defendants mind then the defendant should not be found guilty of Kidnapping or Assault and Battery with Intent to Grattify Sexual Desires."

The above quoted instruction as given meets the requirements of *Eastin* v. *State, supra,* and also *Booher* v. *State* (1901), 156 Ind. 435, 60 N. E. 156.

Tendered instructions which are properly covered by other given instructions are properly refused. *Lenovich* v. *State* (1958), 238 Ind. 359, 150 N. E. 2d 884 [*supra*]; *Flowers* v. *State* (1956), 236 Ind. 151, 139 N. E. 2d 185; *Stokes, alias Coleman* v. *State* (1954), 233 Ind. 300, 119 N. E. 2d 424.

Appellant's tendered instruction 5 was as follows:

"The evidence of defendants insanity at the time of the commission of this offense need not predominate in weight over that going to show his sanity. If there is a reasonable doubt in your mind of his sanity at the time of the commission of this offense, the law requires that you find him not guilty."

The substance of the instruction was covered in the court's instruction 37 as follows:

"The law presumes that a man is of sound mind until there is some evidence to the contrary. In prosecutions for offense against the law, an accused is entitled to an acquittal if the evidence engenders a reasonable doubt as to this mental

capacity at the time the alleged offense is charged to have been committed. Evidence rebutting or tending to rebut the presumption of sanity need not, to entitle the defendant to an acquittal, preponderate in favor of the accused. It will be sufficient if, when considered in connection with all of the evidence introduced in case, it raises in your minds a reasonable doubt."

The trial court was not obliged to give both instructions dealing with the same subject matter. Therefore, the refusal to give appellant's tendered instruction number 5 did not constitute reversible error.

For the reasons hereinabove stated, judgment is affirmed.

Arterburn, C. J., Bobbitt and Landis, JJ., concur.

Jackson, J., dissents with opinion.

### DISSENTING OPINION.

JACKSON, J.—On the facts in the instant case as shown by the record herein, the majority opinion is erroneous, in my view, for the following reasons.

This is an appeal from a conviction on an affidavit in two counts, one charging kidnaping and the other charging assault and battery upon a female child under the age of sixteen years with intent to gratify sexual desires.

The statute upon which the first count of the affidavit was based is Acts 1905, ch. 169, §358, p. 584; 1929, ch. 154, §1, p. 477, being §10-2901, Burns' 1956 Replacement.[1]

---

1. Kidnaping.—Whoever kidnaps, or forcibly or fraudulently carries off or decoys from any place within this state, or arrests or imprisons any person, with the intention of having such person carried away from any place within this state, unless it be in pursuance of the laws of this state or of the United States, is guilty of kidnaping, and, on conviction, shall be imprisoned in the state prison during life.

The statute upon which the second count of the affidavit was based is Acts 1905, ch. 169, §354, p. 584; 1951, ch. 277, §1, p. 825, being §10-403, Burns' 1956 Replacement.[2]

Count one of the affidavit, in pertinent part, reads as follows:

"....that JERRY MIDWINTER SHIPMAN on or about the 31st day of July. A.D., 1959 at and in the County of Marion in the State of Indiana, did then and there feloniously, fraudulently carry away, decoy and kidnap the following person namely: DELORES ANN MORGAN, from a place within said State of Indiana, to-wit: In the vicinity of 2215 N. New Jersey St., in the City of Indianapolis, in said County of Marion in said State of Indiana, with the felonious intention then and there and thereby carrying the said DELORES ANN MORGAN, away from said place within said State and said acts were not then and there done in pursuance of the laws of the State of Indiana or of the United States, then and there being...."

Count two of the affidavit, in pertinent part, reads as follows:

".... JERRY MIDWINTER SHIPMAN on or about the 31st day of July. A. D. 1959, at and in the County of Marion and in the State of Indiana, did then and there unlawfully, feloniously and

2. Assault and battery.—Whoever in a rude, insolent or angry manner, unlawfully touches another, is guilty of an assault and battery, and on conviction, shall be fined not more than one thousand dollars [$1,000], to which may be added imprisonment in the county jail not exceeding six [6] months; Provided, That whenever in the commission of the offense any person removes, tears, unbuttons, unfastens, or attempts to remove, tear, unbutton or unfasten any clothing of any child of the opposite sex or fondles or caresses the body of any part thereof of such child who is of the age of 16 years or under, with the intent to gratify the sexual desires or appetites of the offending person or, under circumstances which frighten, excite, or tend to frighten or excite such child, the punishment shall be imprisonment in the Indiana state prison for a period of time of not less than one [1] year nor more than five [5] years.

purposely in a rude, insolent and angry manner, touch one DELORES ANN MORGAN, a female child of the opposite sex of the said JERRY MID-WINTER SHIPMAN and under the age of sixteen (16) years, to-wit: Seven (7) years of age; and that the said JERRY MIDWINTER SHIP-MENT [SHIPMAN] did then and there in the commission of said assault and battery, tear and remove the clothing of the said DELORES ANN MORGAN and did fondle the body of said child with the intent then and there to gratify the sexual desires or appetites of the said JERRY MIDWINTER SHIPMAN, then and there being . . . ."

The record before us discloses that the evidence most favorable to the appellee, excepting the testimony of the doctor, the child Delores Ann Morgan and the statement of the appellant, all of which on account of its importance, is set out in greater detail later, may be summarized as follows:

On July 31, 1959, about 3:30 p.m., Delores started to the neighborhood grocery. After about 4:00 p.m. on her failure to return home, her mother became alarmed and reported to the Indianapolis Police that Delores was missing. At the time of her disappearance she was wearing a white blouse, blue shorts and a pair of panties. The child was gone all night and returned home about 2:30 or 3:00 p.m. the next afternoon. In the meantime she had been the subject of a search by the mother and police authorities.

The child and appellant were seen in a green Chrysler sedan several places in Marion County during the interim. Some time later on in the afternoon or evening of July 31, 1959, appellant drove his car into a fence in the vicinity of Post Road and Highway 52. The car was stuck and required a wrecker to get it out of the fence. Delores accompanied appellant and passers-by in their car to several filling stations

to get a wrecker to move the car. The driver of the car, his girl friend and others identified the appellant as the driver of the green Chrysler sedan and Delores as the little girl with him.

The mother testified that when Delores returned home she was not wearing any panties, her clothes were dirty and her shorts were torn. She also testified that the girl's private parts were red.

When looking for appellant, who was then unknown, and who was located through the green car, the mother, Delores and one or more policemen went to his apartment. The first statement made by appellant was "[h] i Delores. That is the little girl I had in my car."

The State's witness, Stuart Jackson Duncan, was sworn and qualified as a practicing physician admitted to practice medicine in the State of Indiana, presently an intern at Marion County General Hospital, Indianapolis, Indiana. He identified Delores Ann Morgan as the child who was examined by him on August 1, 1959, and in view of the importance of the testimony of this witness a portion of it is set out verbatim as follows:

"Q. Can you tell the court and jury now what your examination revealed?

A. Well, she was brought to the receiving ward of General Hospital on August 1 and I saw her in the afternoon. I examined her, did a pelvic examination in the receiving ward at that time. On examination the only abnormalcy I found was an erythema of the hymenal membrane which constitute an unusual redness to the hymenal membrane and a tear in the hymenal membrane half a centimeter long at 5:00 o'clock.

Q. Describe to the jury where the hymenal membrane is found."

A. The hymenal membrane is a thin tissue that is found, almost closing the external opening of the vagina in females.

. . . .

Q. Now, I will ask you, Doctor, whether in your opinion there was something inserted into the opening of the vagina so as to cause this wound?

A. Well, I can't say that something was inserted. Certainly pressure had to be applied by some type of object to the membrane and usually tearing of the membrane does result from penetration.

. . . .

And did you take a smear?

A. I took a vaginal smear, yes.

Q. What was the result of that?

A. I did not find any sperm."

On cross-examination a part of the evidence of this witness is as follows, with reference to the condition described by the witness,

"A. It could have come from another source other than pressure I suppose, even a blunt blow.

Q. Could a fall have caused it?

A. A fall could almost cause any type of injury."

The evidence of the witness Delores Ann Morgan, a child of seven years of age, was given mostly in yes and no answers to leading questions propounded by the State, and may be summarized briefly as follows: She remembers going to a grocery store and going for a ride with appellant in a green car. That appellant stopped the witness on the way to the grocery store and told her that he would take her there. The witness got into the car with appellant but he did not stop at the grocery store, instead he took her for a ride in the country as testified to by pre-

vious witnesses. She testified that that night she slept in the back seat of the car and the appellant slept in the front seat. In response to the direct question "[d]o you know of anything that happened that night?", the witness stated "[n]o." The question was also asked of the witness, "[d]id you ever ask him to take you home so you could sleep at home?". Her reply was "[y]es." On being asked what the appellant said, she answered, "I don't know what he said." In response to a question asked the witness "[d]id you ever cry to go home that evening when it got dark?", she replied that she did not. Later on she was asked, "[d]o you remember whether you had panties on at any time", and her answer was "yes". The question was then asked "[w]hat happened to them, do you know?"

"A. They was in the car someplace.
Q. How did those get off you, do you remember?
A. No."

The witness on direct examination was also asked the following questions,

"Q. You don't remember anything about that? Now, could you tell me, Delores Ann, what happened, if anything, while you had your panties off?
A. No.
Q. You don't remember?
A. No."

The defendant, appellant here, by counsel objected to the testimony of this witness prior to her taking the stand on the ground that the witness was under ten years of age and incompetent to testify, objections were also raised during the course of interrogation to the questions as being leading and suggestive.

The witness, Gail James, testified on direct examination, in essence, that in June of 1958, on a school day at noon, the appellant came up to her on the street, took hold of her hand and said "[y]our mother told me to pick you up." They started walking down the street together when she realized that her mother would not send anyone to pick her up, she bit the man on the hand and ran away from him.

The evidence of this witness was objected to by counsel for the defense, on the grounds that she was under ten years of age and incompetent to testify.

Oren Hunter, a witness for the State testified that he was a police office for the City of Indianapolis in the Homicide Bureau on August 1, 1959, and that in that capacity on that occasion around 9:00 o'clock, p.m. in the homicide office he took a statement from appellant. He identified such statement as State's exhibit No. 7. Without objection said statement was introduced in evidence and reads as follows:

"Statement of Jerry Midwinter Shipman W/35 of 1706 N. New Jersey St. Indianapolis Indiana to Detective Sgt. Oren Hunter and Detective Howard Kramer of the Indianapolis Police Department, at Police Headquarters in the Homicide Office, on August 1, 1959.

Q. What is your name and address?

A. Jerry Shipman and I live at 1706 N. New Jersey St. Indianapolis, Indiana.

Q. Who do [you] live with there?

A. My wife and baby.

Q. Where do you work?

A. Shirley Corp. Indianapolis, Indiana

Q. What kind of a car do you drive?

A. I drive my wife's green Chrysler.

Q. Were you driving this same green Chrysler yesterday afternoon Friday, July 31, 1959?

A. Yes sir.

Q. Do you understand the charges that you have been arrested for?

A. Yes.

Q. Will you tell us in your own words what happened yesterday July 31st 59

A. Yes, I started drinking in the Blue Note Tavern Friday about noon, I stayed there about two hours, then I went to a grocery store and bought some gloves and some kind of fruit. I left there and went to a Shell station. I then went to a Whiskey Store somewhere on 16th St. I don't know where I went from there.

Q. When did this little girl get into your car?

A. I don't know.

Q. When did you first notice this girl in your car?

A. In the corn field out east of the city by a creek somewhere.

Q. What happened after you had this accident?

A. Some man and woman came past and took us down to get a wrecker.

Q. Where did you go after you got your car back on the road?

A. I must have drove around somewhere up north, and got around some railroad tracks.

Q. What happened then?

A. I don't know what happened until I got back onto 16th St. At Pam's Drive Inn, the little girl was still with me then.

Q. What did you do at Pam's?

A. Nothing.

Q. Did you molest her?

A. I don't remember.

Q. Can you read and write?

A. Yes, a little.

Q. Will you sign this statement of your own free will?

A. Yes, I will.

wittness [witness]   /s/ Oren Hunter
                    Signed /s/ Jerry M. Shipman
                           Howard D. Kramer Jr."

This concluded the State's evidence and at the conclusion thereof defendant moved for a discharge on both counts. The motion in pertinent part reads as follows:

".... The record is totally lacking of any evidence that the prosecuting witness, Delores Ann Morgan, was either feloniously or fraudulently carried away or decoyed or kidnapped. The defendant would further argue that the record is totally lacking as to any evidence of intent to kidnap. The defendant would argue that the record is totally lacking any evidence that Delores Ann was carried away not in pursuance of the laws of the State of Indiana or the laws of the United States. The matter was never covered, touched on by the State. There is no evidence to show this child, if in fact she was carried away, was carried away contrary to the laws of the State of Indiana or the United States, or that if such carrying away did in fact occur, it was not done in pursuance to the laws of the State of Indiana or the United States, this being a material allegation of the statute on Kidnapping...."

That part of the motion relating to the discharge as to count two in pertinent part reads as follows:

".... in that they did fail to prove an unlawful touching of the child. There is no evidence, no direct evidence at all, the child was in fact molested, which is required by statute. There is no evidence that the defendant did in fact intend to touch the child, no evidence that the defendant either removed, unbuttoned, unfastened or tore the clothing of the child. The defendant would further move for discharge on the grounds the State completely failed to prove venue. There is no evidence in the record by which the Court could determine that the act that occurred as to Assault and Battery with Intent, if it did occur, did occur in fact in Marion County. Before the Court can have jurisdiction over this offense, the State is under the burden of proving beyond a reasonable doubt the offense did occur in fact in this county. The record is totally lacking any

evidence whatsoever. The defendant further moves, as grounds for discharge, that if there was a touching made by the defendant of the child, and which the defense is of the opinion there was none, but if there were, there is no evidence that it was done with the intent to gratify sexual desires or appetite. . . . ."

I deem it unnecessary to consider any of the questions or defenses raised by the defendant other than the first two specifications of the defendant's motion for a new trial, which are,

"1. That the verdict of the jury is not sustained by sufficient evidence.
2. That the verdict of the jury is contrary to law"

I will discuss briefly the first proposition that the verdict of the jury is not sustained by sufficient evidence. The evidence in a criminal case must establish guilt beyond all reasonable doubt.

The mere suspicion of guilt is not sufficient to sustain a conviction, nor is mere opportunity to commit a crime sufficient, but there must be substantial evidence of probative value before a conviction can be sustained, and a mere scintilla of evidence is not enough. *Thomas* v. *State* (1958), 238 Ind. 658, 662, 154 N. E. 2d 503; *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641.

In examining the sufficiency of the evidence to sustain a criminal conviction, the Supreme Court has the duty, as a matter of law, to decide whether the evidence is sufficient to cause reasonable men to believe that the defendant is guilty beyond a reasonable doubt. In resolving this question the reviewing court can pass on the credibility of the testimony to the extent of determining whether it meets this test. *Riggs* v. *State* (1958), 237 Ind. 629, 632, 147 N. E. 2d 579; *Johnson* v. *State* (1957), 236 Ind. 509, 515,

141 N. E. 2d 444; *Thompson* v. *State* (1939), 215 Ind. 129, 137, 19 N. E. 2d 165; *Eberling* v. *The State* (1894), 136 Ind. 117, 121, 35 N. E. 1023; *People* v. *Oyola* (1959), 6 N. Y. 2d 259, 261, 160 N. E. 2d 494.

The second count of the affidavit charged assault and battery with intent to gratify sexual desires. It was incumbent upon the State to prove beyond a reasonable doubt the specific intent, at the time of the touching to gratify the sexual desires or to frighten the child as provided by statute. *Markiton* v. *State* (1957), 236 Ind. 232, 236, 139 N. E. 2d 440.

From the evidence given there is no proof showing that the appellant actually removed or unfastened the clothing of Delores Ann Morgan. Under these circumstances there could be no showing that this was done with the intent specified in the statute, namely, to gratify the sexual desires of the appellant or to frighten the child.

The court or jury may not draw inferences of evil intent where there are no facts to support such conclusion. There must be substantial evidence of probative value before an accused is proven guilty beyond a reasonable doubt. This places the evidence before the Court on appeal, not for the purpose of weighing it, nor for the purpose of determining the facts where there is actual conflict, but for the purpose of deciding as a question of law, whether or not there is substantial evidence in support of the required material facts essential to a conviction.

> "It is not enough to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion or amount to a scintilla." *Sylvester* v. *State* (1933), 205 Ind. 628, 631, 187 N. E. 669; *Baker* v. *State* (1956), 236 Ind. 55, 60, 138 N. E. 2d 641; *Stice* v. *State* (1950), 228 Ind. 144, 149, 89 N. E. 2d 915; *Sullivan* v. *State* (1928), 200 Ind. 43, 47, 161 N. E. 265.

On the second specification of appellant's motion for a new trial, namely, that the verdict of the jury is contrary to law, the preceding comment and citations would apply. The rule has been clearly set out in I. L. E., Vol. 8, §141, p. 231, as follows:

> "Evidence which has no tendency to establish the guilt or innocence of the accused, and which, if effective at all, could serve only to prejudice or mislead, or excite the minds and inflame the passions of the jury, should not be admitted. ..."

The evidence in this case is insufficient and the verdict of the jury is therefore contrary to law. *McCormick* v. *State* (1955), 234 Ind. 393, 398, 127 N. E. 2d 341; *Carrier* v. *State* (1949), 227 Ind. 726, 730, 89 N. E. 2d 74; *Trainer* v. *State* (1926), 198 Ind. 502, 511, 154 N. E. 273; *Chapman* v. *State* (1901), 157 Ind. 300, 303, 61 N. E. 670.

Appellant's motion for a new trial should have been granted, the judgment reversed and the cause remanded to the trial court for a new trial.

NOTE.—Reported in 183 N. E. 2d 823.